LEWIS et al. v. AMERICAN NAVAL STORES CO.

HIBERNIA BANK & TRUST CO. v. LEWIS.

(Circuit Court, E. D. Louisiana. December 8, 1902.)

No. 13,088.

1. RECEIVERS—JURISDICTION OF FEDERAL COURT TO APPOINT—FOREIGN CORPORATIONS.

A federal court has jurisdiction to appoint a receiver for a corporation of another state, where, by appearing and pleading to the merits, such corporation waives its exemption from being sued out of the district of its domicile, and its action in submitting to the jurisdiction of the court cannot be overruled at the instance of a stockholder or creditor who was not a party to the original suit, but who has been permitted to intervene.

2. SAME—EFFECT OF APPOINTMENT—TITLE TO BILL AND RIGHT OF POSSESSION OF PROPERTY.

The effect of the appointment of a receiver for a corporation is to vest in him, as an officer of the court, a qualified title to all of the property of the corporation within the court's jurisdiction and the right of possession for purposes of administration and for the benefit of those ultimately shown to be entitled to it.

8. SAME—PROPERTY IN OTHER JURISDICTIONS.

While the appointment of a receiver does not confer upon him the right to sue in another jurisdiction to recover property or debts, the modern practice is to permit him to bring such suits as a matter of comity where such permission will not conflict with the rights of citizens or creditors in the state where the suit is brought; and the constant tendency of the courts is towards a more liberal policy, which recognizes the receiver's right to the possession of the property embraced by the decree appointing him, although situated without the territorial jurisdiction of the court making the appointment.

**4. SAME—ANCILLARY SUITS.**

The practice of bringing ancillary suits and obtaining the appointment of a receiver therein in different jurisdictions may properly be followed where the defendant is a corporation engaged in business and owning property in different federal districts and in different states; and, while 'the courts in which such auxiliary suits are brought are entirely independent in fact of the court of primary jurisdiction, in the exercise of their discretion and to the end of securing economy of administration and equality of distribution, they will treat their jurisdiction as ancillary.

**5. SAME—SUITS FOR WINDING UP CORPORATION — COURT OF PRIMARY JURISDICTION.**

Where a decree has been entered by a federal court appointing a receiver for a corporation of another state, which owns property in the district consisting in part of real estate, on a bill filed by stockholders and creditors for winding up its affairs, which the corporation has answered, submitting to the jurisdiction, such court should be recognized as the court of primary jurisdiction by all other courts in which other proceedings may be subsequently instituted having the same object in view, even those in the state in which the corporation was organized, where it conducts no business and has no property in such state, and but a single stockholder, holding one share of stock, to meet a requirement of the state laws.

**6. FEDERAL AND STATE COURTS—PRIORITY OF JURISDICTION—APPOINTMENT OF RECEIVER.**

A bill was filed in the circuit court of the United States for the Southern district of Alabama against defendant, a New Jersey corporation, which owned property in the district, and had complied with the laws of the state with reference to foreign corporations doing business in the state by filing a copy of its articles of incorporation and designating an agent on whom process might be served. Complainants were large stockholders, and also creditors, and prayed for the appointment of a receiver and the liquidation of the business of the corporation by the court. On the same day service was made an answer was filed by authority of the directors admitting the allegations of the bill and consenting to the appointment of a receiver, and on the following day a decree was entered making the appointment, and the property of the corporation was turned over to the receiver. *Held,* that such decree vested the receiver with the right to possession of property of the corporation situated in Louisiana, as against a different receiver, appointed by a state court of Louisiana in a suit instituted therein by another stockholder, in which the petition was not filed nor service made until a later date than in the federal court.

In Equity. Ancillary suit for liquidation of the American Naval Stores Company. On application for an order requiring the receiver to turn over property to a receiver appointed by other courts.

T. M. Stevens and J. H. Lyons, for plaintiffs.

Wm. C. Fitts, D. B. H. Chaffe, and E. J. Bowers, for petitioner Hibernia Bank & Trust Co.

J. P. Blair, for respondent J. J. Lewis.

Before SHELBY, Circuit Judge, and PARLANGE, District Judge.

SHELBY, Circuit Judge. This is a contest between two receivers, appointed by different courts, each claiming the right to the possession and control of the assets of the defendant corporation. To show the points in controversy, it is necessary to state the facts as shown by the pleadings and the evidence offered at the hearing.

The parties to the immediate controversy are J. J. Lewis, who was

appointed receiver by the United States circuit court for the Southern district of Alabama and by the United States circuit court for the Eastern district of Louisiana, and the Hibernia Bank & Trust Company, which has been appointed receiver of the defendant corporation by the civil district court for the parish of Orleans, state of Louisiana, and also by the United States circuit court for the district of New Jersey. J. J. Lewis, as such receiver, is now in the possession of the assets in question, and the Hibernia Bank & Trust Company, as receiver, seeks to obtain an order placing it in possession of such assets. Lewis' title as receiver will first be stated.

On September 25, 1902, D. R. Lewis, a citizen of the state of North Carolina, and W. P. Lewis, a citizen of the state of Alabama, residing in the Southern district of that state, filed their bill ·in the United States circuit court for the Southern district of Alabama, against the American Naval Stores Company, a corporation organized under the laws of New Jersey. Plaintiffs are stockholders in the defendant corporation, having $20,000 of stock, and are creditors of the corporation to the amount of $2,650. The capital stock of the corporation is $250,000, but only $106,000 of the stock has been issued and paid for. The debts of the corporation amount to about $100,000. Its assets consist of real estate, part of which is situated in the Southern district of Alabama and part in the Eastern district of Louisiana,—that in Alabama worth about $3,834.48, and that in Louisiana worth about $12,659.74; of bills receivable and accounts, secured and unsecured, amounting to about $125,000; of rosin in Florida worth about $8,000, in Illinois, worth $18,000, and in Kentucky, worth $5,000; and other personal property in Mobile and in New Orleans. These facts appear by the bill, which elaborately states the grounds and reasons why it became and is necessary to appoint a receiver, and why it would be to the interest and advantage of the stockholders and creditors of the corporation to appoint one. The prayer is that a receiver may be appointed to take possession and control of all the assets, credits, and property belonging to the defendant company, and that the company may be liquidated, adjusted, and wound up under the supervision of the court, and for an injunction restraining any and all parties from prosecuting or instituting any suits against the defendant company, and for general relief. A subpoena in equity was issued on the day the bill was filed, and served on that date. On the same day (September 25, 1902) the defendant, the American Naval Stores Company, answered the bill, admitting its allegations, and consenting and agreeing that a receiver be appointed. It is shown in the answer that the board of directors of the defendant company, having had notice of such bill, had authorized and directed the president to file an answer consenting to the appointment of a receiver. The answer is under seal of the defendant corporation, and is verified by the president. The defendant corporation had complied with' the constitution and laws of the state of Alabama by filing in the office of the secretary of state a certified copy of its articles of incorporation, designating its known place of business in Mobile, Ala., and an agent on whom process might be served. A foreign corporation may be sued in any county in Alabama where it does business. Const. Ala. 1901, art. 12, § 232; Ex parte

Schollenberger, 96 U. S. 369, 24 L. Ed. 853.   On September 26, 1902, the bill and answer being submitted to one of the circuit judges of the Fifth circuit, a decree was rendered appointing J. J. Lewis receiver, as prayed for, with power and authority to take charge and possession of all the assets, real and personal, of the defendant, and with power to collect the debts due to the company from any and every source, and with the usual powers conferred on receivers.   He was required to give and did give bond in the sum of $100,000.   It was further ordered, adjudged, and decreed that all stockholders, stock subscribers, and creditors were enjoined from instituting or prosecuting any suits against the company, and from interfering with or seeking to reach any of the assets or property of the defendant company, "except in this court and in this cause."   On the same day—September 26, 1902—an ancillary bill addressed to the judges of the circuit court of the United States for the Eastern district of Louisiana by the same plaintiffs and against the same defendants—a similar answer by the defendants having been presented—was submitted to the same circuit judge, and a decree was signed assuming in that court ancillary jurisdiction of the cause, and confirming the appointment of J. J. Lewis as receiver.   This ancillary bill and the decree thereon were received and filed in the office of the clerk of the United States circuit court for the Eastern district of Louisiana on September 29, 1902.   On the same day similar ancillary bills and answers were presented to the same circuit judge as judge of the United States circuit court for the Northern district of Florida and as judge of the United States circuit court for the Southern district of Mississippi, and similar ancillary decrees were signed by him.   On September 29, 1902, on similar ancillary proceedings, J. J. Lewis was appointed receiver of the defendant corporation by the United States circuit court for the Eastern district of Kentucky, by decree signed by one of the judges of that court.   On October 3, 1902, on similar ancillary proceedings in the United States circuit court for the Northern district of Illinois (a judge of that court presiding), J. J. Lewis was appointed receiver of the defendant company.

The claim and title to the assets asserted by the Hibernia Bank & Trust Company as receiver must now be stated.   Its claim is asserted in two separate petitions, which will be considered together.   On September 26, 1902, Charles E. Pearce, a citizen of Mobile, Ala., filed a petition against the American Naval Stores Company in the civil district court for the parish of Orleans, La.   He is a stockholder in the defendant company to the amount of $1,000, being the owner of one share.   The petition alleges that the company has assets in New Orleans, and that the president and secretary of the company have resided there during the last 18 months, and that none of the officers of the corporation are domiciled in New Jersey, except one director, who has never been present at any of the meetings of the directors, and who was elected and holds office solely to comply with the statute of New Jersey, which requires that one director of a corporation created under its laws should be a resident of the state.   Irregularities in the management of the company are then alleged, and it is prayed that an injunction should be issued enjoining and restraining the defendant corporation and its agent from selling, pledging, or

alienating any of the property of the company. It is also prayed that the defendant be ordered to show cause why a receiver should not be appointed to take possession of the property and business of the defendant corporation, and that, after due proceedings, a fit and proper receiver be appointed, fully empowered to manage, control, conduct, or liquidate the affairs of the defendant. On the same day—September 26, 1902—the judge of the state court granted the writ of injunction, and also made an order that the defendant show cause on the 7th day of October, 1902, why a receiver should not be appointed as prayed for; and on the same day—September 26, 1902—citation was duly issued on the petition. A copy of the injunction was served by personal service on "M. A. Moses, director," and a copy on "J. J. Lewis, secretary and treasurer," on September 26, 1902. The citation and order were served September 27, 1902, by the sheriff of the parish, "by leaving a copy of the same at the office of the defendant corporation at No. 606 Commercial alley, in the hands of L. C. Bodit, clerk, the president and other superior officers being absent." On October 27, 1902, Pearce's application for the appointment of a receiver coming on to be heard in the district court for the parish of Orleans, that court rendered judgment appointing the Hibernia Bank & Trust Company receiver of the defendant corporation upon its furnishing bond in the sum of $25,000, which was given, with full power and authority to "hold, administer, manage, and dispose of the property and income of the corporation in such manner as the court shall direct." On October 30, 1902, Charles E. Pearce filed a bill in the United States circuit court for the district of New Jersey against the American Naval Stores Company, seeking to have a receiver appointed for the defendant corporation by that court. He alleged that he was a stockholder in the company, holding one share, and was a creditor having a claim against the corporation for more than $2,000. He described the proceedings in the United States circuit court for the Southern district of Alabama and in the other United States courts in which a receiver had been appointed, and also the proceedings in the Louisiana state courts. On October 30, 1902, the New Jersey federal court, without notice to the defendant corporation, appointed the Hibernia Bank & Trust Company receiver of the American Naval Stores Company, with full power and authority to take possession and control of the assets, credits, and property of the defendant company wheresoever situated, and all papers and books of accounts, choses in action of every character, belonging to the said company. It was further ordered by the New Jersey court that the defendant show cause on the 10th day of November "why the appointment of said receiver should not be made permanent, and an injunction issue, as directed, to the said defendant"; and, cause having been shown, the question of making the receiver permanent by that court is still pending and undetermined. It is shown by affidavits offered that the debtors of the defendant corporation reside in the Southern district of Alabama, the Northern district of Florida, the Southern district of Mississippi, and the Eastern district of Louisiana, and that no debtor of the corporation resides in the state of New Jersey, and that the corporation owns no property situated in New Jersey; and that the notes, mortgages, and accounts due to the

defendant corporation which have come into the hands of J. J. Lewis as receiver amount to $176,728.96; and that he has been actively performing the duties of his trust since his appointment on September 26, 1902.

1. The United States circuit court for the Southern district of Alabama unquestionably had jurisdiction of the case made by the bill. The fact that the defendant corporation was chartered under the laws of New Jersey does not, under the pleadings, affect the question of jurisdiction. If it be conceded that the corporation could not be sued, without its consent, except in New Jersey, the record in this case shows that it submitted to the jurisdiction of the court. It has been held by the supreme court that exemption from being sued out of the district of its domicile is a privilege which a corporation may waive, and which is waived, by pleading to the merits. It is so held in Trust Co. v. McGeorge, 151 U. S. 129, 14 Sup. Ct. 286, 38 L. Ed. 98, in which case a receiver was appointed for a defendant foreign corporation. The American Naval Stores Company having appeared and voluntarily submitted itself to the jurisdiction of the court, its action cannot be overruled at the instance of a stockholder or creditor, who was not a party to the original suit, but who has been permitted to intervene. Trust Co. v. McGeorge, supra; Railway Co. v. McBride, 141 U. S. 127, 11 Sup. Ct. 982, 35 L. Ed. 659; Ex parte Schollenberger, 96 U. S. 369, 24 L. Ed. 853; Bank v. Morgan, 132 U. S. 141, 10 Sup. Ct. 37, 33 L. Ed. 282; 5 Thomp. Corp. § 6860; Winans v. Navigation Co., 6 Blatchf. 215, Fed. Cas. No. 17,862.

2. The decree appointing J. J. Lewis receiver vested in him a qualified title to the property of the corporation, together with the right of possession for the purpose of administration. 5 Thomp. Corp. § 6918. By this is not meant that the ownership of the property is changed, or even the right to possession as between the parties. The effect of the appointment is to put the property, from the time of the appointment, in his custody as an officer of the court for purposes of administration, and for the benefit of the party ultimately shown to be entitled to it. Union Bank v. Kansas City Bank, 136 U. S. 223, 10 Sup. Ct. 1013, 34 L. Ed. 341. The right to obtain the custody, control, and possession of all the property within the jurisdiction of the court making the appointment is conferred on the receiver by the decree.

3. In Booth v. Clark, 17 How. 322, 335, 15 L. Ed. 164, it was held that the appointment of a receiver by a court of chancery under a creditors' bill does not confer the right to sue in a foreign jurisdiction. In that case, which was decided in 1854, Mr. Justice Wayne said: "Our industry has been tasked unsuccessfully to find a case in which a receiver has been permitted to sue in a foreign jurisdiction for the property of the debtor." That case has been often cited to sustain the proposition that a receiver appointed in one state has no right to sue in another state. The doctrine is generally recognized that a foreign receiver has no right to sue in another state, but, while the right is denied, the modern practice is to permit him to bring such suits, on the ground of comity, in all cases where such permission will not conflict with the rights of citizens or creditors in the state where the suit

is brought. And the constant tendency of the courts is toward a more enlarged and liberal policy,—the recognition of the receiver's right to the possession of the property embraced by the decree appointing him, although situated without the jurisdiction of the court making the appointment. Boulware v. Davis, 90 Ala. 207, 8 South. 84, 9 L. R. A. 601; Beach, Rec. § 682; High, Rec. (2d Ed.) 241; Gluck & B. Rec. (2d Ed.) 42; Gilman v. Ketcham, 84 Wis. 60, 54 N. W. 395, 23 L. R. A. 52, 36 Am. St. Rep. 89; Hurd v. City of Elizabeth, 41 N. J. Law, 1; Chandler v. Siddle, 3 Dill. 477, Fed. Cas. No. 2,594; Bank v. McLeod, 38 Ohio St. 174. This tendency is so pronounced, and so well sustained by authority, that it is probable that the doctrine ultimately to be established will give to receivers the same right of action in all the states of the Union with which they are invested in the jurisdiction in which they are appointed. There can be no doubt but that the decree of the circuit court for the Southern district of Alabama of September 25th invested the receiver not only with a limited title to the property within the local jurisdiction of the court, but with a right that would be recognized, on the ground of comity, to sue for and recover any of the property or debts belonging or due to the defendant corporation outside of the Southern district of Alabama.

4. But Lewis' claim as receiver to hold the property against the contention of the receiver of the state court is not based alone on the decree of the circuit court of the Southern district of Alabama. On the same day that that decree was entered, a decree was rendered on ancillary proceedings in equity in the United States circuit court for the Eastern district of Louisiana and in other districts of the Fifth judicial circuit, as stated above. This procedure and practice of bringing auxiliary suits originated from the limitations imposed upon the territorial jurisdiction of the circuit courts, and from the fact that many railroads run into or through two or more states, constituting one property and one continuous line. 2 Bates, Fed. Eq. Proc. 617; Southern Ry. v. Carnegie Steel Co., 176 U. S. 257, 20 Sup. Ct. 347, 44 L. Ed. 458; Farmers' Loan & Trust Co. v. Northern Pac. Ry. (C. C.) 72 Fed. 26. While the practice is especially applicable to such cases in which the title to real estate in different jurisdictions will be conveyed, it is applied also to cases involving the property of corporations engaged in business and owning property in different judicial districts and in different states. The courts in which the auxiliary suits are brought are entirely independent in fact of the court of primary jurisdiction. The end to be secured—the collection of all the assets of the corporation, and their uniform and equitable administration and distribution—moves the discretion of the court to treat its jurisdiction as ancillary, and to aid in the collection of the assets, and to transmit them to the court of primary jurisdiction; and this course secures equality among creditors and stockholders and economy in the administration. Shinney v. Building Co. (C. C.) 97 Fed. 9; Towle v. Society (C. C.) 60 Fed. 131; Miles v. Association (C. C.) 95 Fed. 919.

5. The first suit was brought in the circuit court of the United States for the Southern district of Alabama. That court has been recognized as the court of primary jurisdiction by the several federal courts in the

Fifth circuit and in the Sixth circuit in which auxiliary bills have been filed. The plaintiffs invoked, and the defendant consented to and acquiesced in, the jurisdiction of that court. Part of the defendant's property is situated in that district. The defendant's stockholders first organized an Alabama corporation, but subsequently obtained the charter in New Jersey for business reasons. It has complied with the constitution and laws of Alabama by filing with the secretary of that state a copy of its charter, and designated an agent on whom process may be served, and a place of business in that state. The bill that was filed in the United States circuit court of the district of New Jersey was exhibited by a single stockholder more than 30 days after the jurisdiction of the federal court in Alabama had attached and had been acquiesced in by the defendant. The defendant corporation has but one stockholder in New Jersey, and he holds but one share. No debtor to the corporation lives in New Jersey, and it owns no property in that state. In Farmers' Loan & Trust Co. v. Northern Pac. Ry. Co. (C. C.) 72 Fed. 31,—a case decided by four of the circuit justices, —several bills having been filed relating to the same corporation and its property, the primary jurisdiction of the court in which the first bill was filed was recognized; the court saying:

"But in view of what has transpired in these foreclosure proceedings,— especially in view of the fact that a portion of line of road owned by the Northern Pacific Railroad Company was and is within the state of Wisconsin, and at the time of the filing of the creditors' bill (in which the trustee in the mortgage was a coplaintiff) the Northern Pacific Railroad Company was operating its road through the Eastern district of Wisconsin, although that part of its line so operated belonged to another company, and was under lease to the Northern Pacific Railroad Company for ninety-nine years,—and in view of the further fact that the railroad company entered its appearance, and assented to the act of the circuit court for the Eastern district of Wisconsin in taking jurisdiction, and as such exercise of jurisdiction has been recognized by the circuit court in every district along the line of the Northern Pacific Railroad, and all parties, for the space of about two years, during which time many orders in the course of administration have been entered, we are of opinion that the circuit court for the Eastern district of Wisconsin has jurisdiction to proceed to a decree of foreclosure which will bind the mortgagor company and the mortgaged property, and ought, therefore, to be recognized by the circuit courts of every district along the line of the road as the court of primary jurisdiction; and that proceedings in the latter court, while protecting the rights of local creditors, should be ancillary in their character, and subordinate to the proceedings in the court of primary jurisdiction."

In view of the facts shown by the record, we think the court in which the first bill was filed should be recognized as the court of primary jurisdiction. 2 Bates, Fed. Eq. Proc. § 617.

6. But the claim of the Hibernia Bank & Trust Company does not rest alone on the decree of the New Jersey federal court. On September 26, 1902,—one day after the date of the decree of the federal court in Alabama,—Charles E. Pearce, a citizen of Mobile, Ala., living within the jurisdiction of that court, filed a petition in the civil district court for the parish of Orleans, La., against the defendant corporation. He sued as stockholder. His suit resulted in an injunction granted that day, and in service and citation served on September 27, 1902, and in the appointment of the Hibernia Bank & Trust Company as receiver

on October 27, 1902. It is contended by the Hibernia Bank & Trust Company that, inasmuch as the ancillary decree signed in Alabama by the circuit judge on September 26th did not actually reach the clerk's office in the Eastern district of Louisiana till September 29th, the state court first obtained jurisdiction of the assets of the defendant corporation situated within the Eastern district of Louisiana. Much that we have already said about the effect of the decree of the federal court in Alabama bears on this contention. The general rule is, undoubtedly, that the court which first takes cognizance of the controversy is entitled to retain jurisdiction till the litigation is ended, and to take possession of the property involved in the controversy to the exclusion of all other courts of concurrent jurisdiction. No other court can interfere with the property without permission of the court first acquiring jurisdiction. While this is indisputable, nice questions constantly arise as to when a court acquires jurisdiction, and as to which of two courts is entitled to hold and to administer and distribute the assets of a defendant. In an important case, Woods, Circuit Judge, gave controlling effect to the filing of the bill and the service of the subpœna in equity, and Circuit Justice Bradley to the obtaining actual possession of the property which was involved in the suit (Wilmer v. Railway Co., 2 Woods, 410, Fed. Cas. No. 17,775); and in Adams v. Trust Co., 15 C. C. A. 1, 66 Fed. 617, 620, the United States circuit court of appeals for this circuit approved the views expressed by Judge Woods that the actual seizure of the property involved was not necessary to the jurisdiction of the federal court to the exclusion of the jurisdiction of a state court of concurrent jurisdiction. In the latter case Judge Pardee, speaking for the court, held that the "views expressed by Judge Woods have been accepted and followed in this circuit at least, and we fully concur therein." That decision is controlling in this court. The late authorities sustain this view that priority of jurisdiction is dependent on priority of service (Gluck & B. Rec. [2d Ed.] 99); but many other cases make the jurisdiction depend on the priority of making the appointment. Thomp. Corp. § 6855.

The Alabama federal court first obtained jurisdiction by the filing of the bill and service of process, and by first appointing a receiver, and also by obtaining, through its receiver, actual possession of the property involved before the filing of the petition and service of process thereon in the state court. By the application, therefore, of any one of the rules stated, the Alabama federal court first acquired jurisdiction; and, having acquired jurisdiction of the controversy, and possession, through its receiver, of the property involved, the subsequent proceedings and decree in the state court conferred no authority or right on the receiver appointed by the latter court to take or obtain by suit the possession of the property. Gluck & B. Rec. (2d Ed.) 97.

A decree will be entered denying the petitions of the Hibernia Bank & Trust Company. Petitions denied.