59 F.2d 553 (1932)
In re SCHULTE-UNITED, Inc.
In re MILLER'S, Inc.
IRVING TRUST CO. OF NEW YORK
v.
NELSON et al. (eight cases).
Nos. 9339, 9379, 9350, 9380, 9340, 9381, 9351, 9382.
Circuit Court of Appeals, Eighth Circuit.
May 18, 1932.
*554 *555 Charles M. Blackmar, of Kansas City, Mo. (Henry I. Eager and Meservey, Michaels, Blackmar, Newkirk & Eager, all of Kansas City, Mo., and Davies, Auerbach & Cornell, of New York City, on the brief), for appellants.
Harry I. Schwimmer, of Kansas City, Mo., and Louis V. Stigall, of St. Joseph, Mo. (Manard & Schwimmer, of Kansas City, Mo., on the brief), for appellees.
Before VAN VALKENBURGH and SANBORN, Circuit Judges, and DAVIS, District Judge.
SANBORN, Circuit Judge.
The Irving Trust Company of New York was appointed receiver of Schulte-United, Inc., and Miller's, Inc., on January 14, 1931, by the United States District Court for the Southern District of New York, upon separate involuntary petitions in bankruptcy. It continued as receiver until February 5, 1931, when it was elected trustee in bankruptcy of both corporations. Schulte-United, Inc., operated a chain of stores, one of which was in Joplin, Mo., and another in St. Joseph, Mo. Miller's, Inc., was a separate corporation, but had a merchandise department in each of these stores, was apparently under the same management as Schulte-United, Inc., and affiliated with it.
On January 23, 1931, a petition for the appointment of an ancillary receiver for Schulte-United, Inc., was filed by certain creditors in the United States District Court for the Western District of Missouri, in the St. Joseph Division, and on January 27, 1931, a similar petition was filed in the Southwestern Division. The Joplin store was in the Southwestern Division, and the St. Joseph store in the St. Joseph Division. On January 27, 1931, George A. Nelson was appointed ancillary receiver for Schulte-United, Inc., and went into possession of both stores. Harry I. Schwimmer, of Kansas City, was appointed attorney for the ancillary receiver with respect to the property of the bankrupt at Joplin, and Louis V. Stigall was appointed as his attorney with respect to the property at St. Joseph.
On January 30, 1931, upon the application of the ancillary receiver, representing that merchandise of Miller's, Inc., was in the same stores, that it was in actuality a part of the assets of Schulte-United, Inc., and that Miller's, Inc., was in bankruptcy and the Irving Trust Company was its receiver, the court made an order extending the receivership to include the assets of Miller's, Inc.
On February 10, 1931, the ancillary proceedings were referred to Fred S. Hudson, referee in bankruptcy, as special master, for the supervision of the operation of the business and "for all other purposes necessary for the administration and liquidation of this estate." On the same day, the court entered an order requiring the ancillary receiver to retain the proceeds from the sale of merchandise.
On February 25, 1931, the Irving Trust Company, trustee, petitioned for the termination of the ancillary receivership, alleging that it was then vested with title to the property of the bankrupt and was entitled to its possession, and that the property was in the hands of "George A. Nelson, heretofore, on January 28, 1931, * * * duly appointed and qualified as ancillary receiver of said bankrupt." This petition was referred to the special master, and he, on March 12, 1931, recommended against the termination of the ancillary receivership. No exceptions were taken to his report, and on March 14, 1931, the court denied the application to terminate, but granted leave to the Irving Trust Company to renew the request at any time.
On March 28, 1931, the Irving Trust Company filed a petition reciting that it was trustee and was authorized to continue the business and to take over the property of the bankrupt in the hands of the ancillary receiver "after proper deductions approved by the court"; that to enable it to perform its duty it was necessary that "all ancillary receivers should account promptly and promptly turn over to your petitioner all assets in their respective possessions remaining after the determination by the Court of amounts properly to be paid for compensation and expenses of the receivers and of their attorneys, and any other proper deductions determined by the Court for charges and expenses of the receivership"; that the Bankruptcy Act imposes the same limitations upon the fees of ancillary receivers as apply to the fees of other receivers, "and notice to the creditors of the bankrupt of applications for allowances to ancillary receivers and their attorneys is specifically required by the provisions of section 48, subdivision (d) and *556 section 58 of the Bankruptcy Act [11 USCA § 76, subd. d, and § 94] and General Order XLII [11 USCA § 53]"; that "there are approximately 4,000 creditors of Schulte-United, Inc.," and that "the making of allowances to ancillary receivers or their attorneys without notice to all creditors would not be in accordance with law, but that the giving of notice, in each ancillary receivership, to the very large number of creditors involved would be extremely delaying, expensive and burdensome"; that "there is an active and representative committee of creditors of the bankrupt, which committee is represented by its own attorneys," and that the creditors have conferred upon the committee authority to represent all creditors in respect of most of the matters arising in the administration of the estate; "that the delivery by ancillary receivers to your petitioner of two copies (one to be submitted by petitioner to the creditors' committee) of their respective proposed accountings, applications for allowances to receivers and their attorneys, etc., and the deferring of the hearing upon applications in connection therewith until opportunity has been had for the trustee and the creditors' committee to examine said applications, would be a practical method of avoiding legal irregularities in such applications, and would constitute a very substantial saving in time, labor and expense"; and that "the Creditors' Committee has requested the adoption" of this procedure.
Upon motion of counsel for the Irving Trust Company, trustee, an order was entered March 28, 1931, requiring the ancillary receiver to prepare his account and to send two copies of it to the trust company and also two copies of any proposed applications for payment of compensation and expenses of himself and of his attorneys, and providing that the date of hearing should be fixed by the court so as to allow reasonable opportunity to the trustee and the committee of creditors to examine, approve, or object to the account and applications. On the same day, on motion of the trustee, the court required the ancillary receiver to turn over to the trustee all property held by him except cash on hand, and to relinquish possession of the stores to the trustee.
During the course of the proceedings, and on February 19, 1931, the special master had allowed, on account of services, $500 to the ancillary receiver, $1,250 to Mr. Stigall, $1,250 to Mr. Schwimmer, and $250 in each division to Manard & Schwimmer, attorneys for the petitioning creditors. The orders allowing these sums were made by the special master, and the partial allowances were paid by the ancillary receiver on February 19, 1931. Applications for further allowances were made by the ancillary receiver, by his attorneys, and by the attorneys for the petitioning creditors on April 20 and 27, 1931. They were referred to the special master to take testimony and to report his findings and recommendations. On May 16, 1931, he filed his reports, which recite that the matter of these applications came on for hearing before him on May 11, 1931, upon notice of hearing, "the parties appearing in person and by their attorneys, and the Irving Trust Company appearing by and through its attorney, Charles M. Blackmar," and that testimony, oral and documentary, was received. In his report filed in the St. Joseph Division, with respect to the St. Joseph store, he finds that the ancillary receiver took in $40,037.17 in cash and on April 1, 1931, turned over to the trustee merchandise inventoried at $66,663.87, and furniture and fixtures which cost $52,366, that the receivership lasted two months, and that the attorney for the ancillary receiver devoted many days of his time and did considerable work. In his report filed in the Southwestern Division, with reference to the Joplin store, the master found that the ancillary receiver took in $40,390.55 in cash, and on April 1, 1931, turned over to the trustee merchandise inventoried at $52,541.07, and furniture and fixtures which cost $47,240.58; and he made the same findings with respect to the duration of the receivership and the services of counsel as in his report filed in the St. Joseph Division. In his reports, he recommended that additional allowances be made as follows: $1,500 in each division, or $3,000 in all, to the ancillary receiver; $1,250 to Mr. Schwimmer for his services in the Southwestern Division; $1,250 to Mr. Stigall for his services in the St. Joseph Division; $500 to Manard & Schwimmer, as attorneys for the petitioning creditors, being $250 in each division.
On June 1, 1931, the Irving Trust Company filed two motions in each division, one to dismiss the petitions for the appointment of the ancillary receiver and to vacate his appointment because of insufficiency of the petitions and lack of jurisdiction; the other to dismiss the petitions to include the assets of Miller's, Inc., in the ancillary receivership, and to vacate the order extending the receivership to include those assets, on similar grounds. On the same day, it filed in each division exceptions to the report of the *557 special master recommending additional allowances, asserting that the orders appointing the ancillary receiver were void because the petitions were not filed at the request of the court of original jurisdiction and because the petitions were insufficient; that the applications for allowances should have been made to the court of original jurisdiction; that the orders allowing compensation are beyond the order of reference; that there is no authority for the allowance of fees for attorneys for petitioning creditors in ancillary receiverships; that total allowances of $2,500 to Mr. Schwimmer for services in the Southwestern Division, and $2,500 to Mr. Stigall for services in the St. Joseph Division, are grossly in excess of their reasonable value; that the attorneys should not have been allowed any compensation after February 5, 1931, the date when the trustee was elected; that they can have nothing for contesting the right of the trustee to possession of the property of the bankrupt; that the assets of Miller's, Inc., cannot be included as a basis of compensation, because the order extending the receivership to include the assets of Miller's, Inc., was void; that there was no oral or documentary evidence before the special master to sustain the allowances, and only the oral statements of Mr. Schwimmer and Mr. Stigall; that the attorneys cannot be compensated for work done in the management of the business, and that the finding as to what the attorneys did is indefinite and uncertain; that the additional allowance to the attorneys for the petitioning creditors is excessive; that the allowances to the ancillary receiver are excessive; that the special master should have stated the cash value of merchandise and fixtures, and not inventory and cost value; that the special master should have made no recommendation for allowances until the property was converted into cash; and that the allowances were made without notice to creditors as required by the Bankruptcy Act and the rules of court.
On July 1, 1931, the Irving Trust Company moved the court for an order requiring the ancillary receiver to remit to the trustee all funds in his possession "less a sufficient sum to pay all of the expenses of the ancillary receiver in this jurisdiction which may be lawfully allowed by this court." On July 25, 1931, the ancillary receiver was ordered to file his final account, which he did on August 5, 1931.
On October 10, 1931, the court entered an order allowing the final account or report of the ancillary receiver, closing the estate, and requiring that all cash be remitted to Irving Trust Company, trustee, except $500 in cash in each division. The order further provided "that any one desiring to except from this order shall have ten days from the date hereof within which to do so."
On October 12, 1931, orders were entered overruling the motions of the Irving Trust Company to dismiss the petitions for the appointment of the ancillary receiver and the petitions to extend the receivership to the assets of Miller's, Inc., and to vacate the orders appointing the ancillary receiver and extending the receivership to include the assets of Miller's, Inc. On the same day, the court overruled the exceptions to the report of the special master recommending allowances to the ancillary receiver and to Mr. Stigall and Mr. Schwimmer, his attorneys, but sustained the exceptions of the Irving Trust Company to the additional allowances recommended for Manard & Schwimmer as attorneys for the petitioning creditors. With that exception, the court allowed the additional compensation recommended. In an oral opinion, the court stated, in effect, that the motions to vacate the ancillary proceedings came too late, and that the validity of the appointment of the ancillary receiver should not then be questioned. With respect to the allowances, the court stated that the final allowances should not have been paid, in view of the objections which had been made to them; that, as to the payment of partial allowances, no one apparently had had any objection, and that none had been made to them; that, while the total allowances were larger than he approved, they were apparently based upon the value of the assets of the estate and in conformity with the usual practice; and that there appeared to be nothing on the face of the report or the record made before the master to justify sustaining the exceptions to his report, and that the exceptions should be overruled.
On October 19, 1931, the trustee filed exceptions to the final report of the ancillary receiver on the grounds that the trustee had appealed from the allowances made to him and his attorneys, and that therefore the order approving the report was premature; that the court had sustained the exceptions to the additional allowances recommended to be paid to the attorneys for the petitioning creditors, but that these had been included in the report, and that the court was without jurisdiction to make any allowances. On October 30, 1931, the court entered an order reciting *558 that the exceptions to the order approving the receiver's final report came on for hearing and were overruled.
The Irving Trust Company, on November 2, 1931, took appeals from the orders of October 12, 1931, making the additional allowances and overruling the motions to dismiss the petitions for the appointment of the ancillary receiver and to vacate the ancillary proceedings, and on November 20, 1931, took appeals from the orders of October 30, 1931, overruling the exceptions to the order allowing the final report of the ancillary receiver.
While there are eight appeals, four relate to orders in one division, and four to the same orders in the other division. Four were allowed by this court, and four by the District Court; the appellants being uncertain as to the proper course to follow in order to secure a review of these orders.
Appeals in bankruptcy are governed by sections 24a, 24b, 24c, and 25a of the Bankruptcy Act, as amended by Act May 27, 1926 (chapter 406, §§ 9, 10, 44 Stat. 664, 665, title 11, USCA § 47 (a), (b), (c), and § 48 (a). 11 USCA § 47 (a) invests the Circuit Court of Appeals with appellate jurisdiction of controversies arising in bankruptcy proceedings. Section 47 (b) gives it jurisdiction "to superintend and revise in matter of law [and in matter of law and fact the matters specified in section 48 of this title] the proceedings of the several inferior courts of bankruptcy" within the circuit; such jurisdiction to be exercised in the form and manner of an appeal to be allowed in the discretion of the appellate court. Section 47 (c) provides that all appeals under section 47 shall be taken within thirty days after the judgment, or order, or other matter complained of, has been rendered or entered. Section 48 (a) provides for appeals (1) from a judgment adjudging or refusing to adjudge the defendant a bankrupt; (2) from a judgment granting or denying a discharge; (3) from a judgment allowing or rejecting a claim of $500 or more.
"It is plain from these provisions that section 47 (a) governs appeals covering `controversies arising in bankruptcy proceedings,' and that such appeals are not required to be allowed by the appellate court. It is also apparent that section 47 (b) governs appeals covering `proceedings in bankruptcy,' and that such appeals require an allowance by the appellate court, except in the cases mentioned in section 48. Before the amendment of 1926 (44 Stat. 664, 665) proceedings in bankruptcy, except those mentioned in section 48, were brought up for review by petition to revise; while those mentioned in section 48 were brought up by appeal. Now all are brought up by appeal." Gate City Clay Co. v. Dickey (C. C. A. 8) 39 F.(2d) 581, 582.
"The phrase `proceeding in bankruptcy' includes questions arising between the alleged bankrupt and his creditors, commencing with the petition for adjudication, and ending with the discharge, and also includes the intermediate administrative steps, such as the election of trustee, allowance of claims, fixing of priorities, and proceedings relating to exemptions, sales, allowances, and other like matters, which courts of bankruptcy dispose of in a summary way. Taylor v. Voss, 271 U. S. 176, 181, 46 S. Ct. 461, 70 L. Ed. 889; In re Friend (C. C. A. 7) 134 F. 778; Thompson v. Mauzy (C. C. A. 4) 174 F. 611; Thomas v. Woods (C. C. A. 8) 173 F. 585, 588, 26 L. R. A. (N. S.) 1180, 19 Ann. Cas. 1080." Broders v. Lage (C. C. A. 8) 25 F. (2d) 288, 289. See, also, Lazarus, Michel & Lazarus v. Prentice, 234 U. S. 263, 34 S. Ct. 851, 58 L. Ed. 1305; Schnurr v. Miller (C. C. A. 8) 49 F.(2d) 109; Quinn v. Gardner (C. C. A. 8) 28 F.(2d) 270; Hunter v. Commerce Trust Co. (C. C. A. 8) 55 F.(2d) 1.
In Morse & Tyson v. Irving-Pitt Mfg. Co. (C. C. A. 8) 18 F.(2d) 692, it was said that compensation due attorneys for petitioning creditors was a "debt or claim" within the purview of 11 USCA § 48 (a) (3), and that an appeal under that section would lie because of the provisions of subdivision 3 of section 64b of the Bankruptcy Act, 11 USCA § 104 (b) (3), giving priority to "the cost of administration, * * * and one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases. * * *"
In Gate City Clay Co. v. Dickey, supra, this court said, speaking of 11 USCA § 48 (a) (3): "The claims there mentioned are claims against the bankrupt or his estate which had their existence prior to the bankruptcy proceedings. The present claim is not of that character. It had no existence prior to the bankruptcy proceedings. It was not a claim for damages against the bankrupt or its estate for breach of contract. It was a claim for use and occupation which arose when the receiver in bankruptcy took possession. It was a claim of the character *559 of costs or expenses of administration, and as such was allowable under 11 USCA § 102."
None of the claims for compensation here involved had their existence prior to the bankruptcy proceedings, and each of the orders complained of was entered in connection with the administration of the bankrupt's estate and not in connection with "distinct and separable issues between the trustee and adverse claimants concerning the right and title to the bankrupt's estate." See Taylor v. Voss, supra. See, also, Remington on Bankruptcy (3d Ed.) vol. 8, page 152; W. J. Davidson & Co. v. Friedman (C. C. A.) 140 F. 853; Yaryan Rosin & Turpentine Co. v. Isaac (C. C. A.) 270 F. 710; Hall v. Reynolds (C. C. A. 8) 224 F. 103; In re Floore (C. C. A.) 16 F.(2d) 113; Banco Commercial De Puerto Rico v. Hunter Benn & Co. (C. C. A.) 31 F.(2d) 921.
It is therefore apparent that the orders here complained of were appealable under 11 USCA § 47 (b) and bring up questions of law only, and that the appeals allowed by the District Court, namely, Nos. 9379, 9380, 9381, and 9382, must be dismissed.
In considering the questions sought to be raised by the appeals under section 47 (b), there are certain considerations which must be kept in mind. This court is not required to reverse for errors which were not prejudicial or to decide questions which are moot. 7 C. J. 433; In re McDuff (C. C. A.) 101 F. 241; Collier on Bankruptcy (13th Ed.) 838; In re Madden (C. C. A.) 110 F. 348; Fisher v. Cushman (C. C. A.) 103 F. 860, 51 L. R. A. 292; Lazarus, Michel & Lazarus v. Harding (C. C. A.) 223 F. 50; In re Boston Dry Goods Co. (C. C. A.) 125 F. 226, 229; Higginbotham-Bailey-Logan Co. v. International Shoe Co. (C. C. A.) 29 F.(2d) 994.
In Marin v. Ellis (C. C. A. 8) 15 F. (2d) 321, 322, this court said: "The burden is on him who alleges error not only to prove that it existed, but also to prove that it was prejudicial."
This court will not consider questions which were not presented to the lower court. In re Grosse (C. C. A.) 24 F.(2d) 305; In re Boston Dry Goods Co., supra. See, also, Weinstein v. Laughlin (C. C. A.) 21 F. (2d) 740; American Petroleum Co. v. Missouri Pac. Ry. Co. (C. C. A.) 25 F.(2d) 441; American Range & Foundry Co. v. Mercantile Trust Co. (C. C. A.) 7 F.(2d) 417.
This court is not required or permitted to consider the evidence on an appeal which brings up for review only questions of law. Moore Dry Goods Co. v. Brooks (C. C. A.) 240 F. 943; Olmsted-Stevenson Co. v. Miller (C. C. A.) 231 F. 69; Hall v. Reynolds, supra; Morse & Tyson v. Irving-Pitt Mfg. Co., supra.
Where the facts upon which an order is based are in dispute, this court must assume, in the absence of a record containing all the evidence, that the findings upon which the order is based are justified. In re O'Connell (C. C. A.) 137 F. 838, 840; In re Throckmorton (C. C. A.) 196 F. 656; Hunter v. Commerce Trust Co., supra; Oriole Phonograph Co. v. Kansas City Fabric Products Co. (C. C. A.) 34 F.(2d) 400.
The appellants say that these appeals are to test (1) the propriety of the appointment of the ancillary receiver; (2) the allowance of fees; (3) the propriety of the confirmation of the final report of the ancillary receiver.
Section 47 (e) requires that an appeal be taken within thirty days after the order complained of has been entered. No appeal was taken from the orders appointing the ancillary receiver, from the orders extending the receivership to include the property of Miller's, Inc., from the orders appointing the attorneys for the receiver, or from the orders making partial allowances.
The court had the power to appoint an ancillary receiver in aid of the receiver or trustee. 11 USCA § 11 (20); Babbitt v. Dutcher, 216 U. S. 102, 30 S. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969; In re Madson Steele Co., 216 U. S. 115, 30 S. Ct. 377, 54 L. Ed. 407; Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300, 32 S. Ct. 96, 56 L. Ed. 208; Lazarus, Michel & Lazarus v. Prentice, supra; Loeser v. Dallas (C. C. A.) 192 F. 909. Since the court had the power, the question of the validity or regularity of the proceedings by which it was induced to exercise it was not open for review, in the absence of appeal from the orders of appointment. A motion to vacate an order, and an appeal from the denial of that motion, is not the equivalent of an appeal from the order itself. If it were, it would be possible to wait until the administration of an estate in bankruptcy was almost completed, and then, by moving to vacate all orders and appealing from the order denying the motion, to secure a review of every order, and thus defeat the purpose of the Bankruptcy *560 Act, which seeks to require a prompt review of orders complained of in a bankruptcy proceeding shortly after they are entered. In the case of Banco Commercial De Puerto Rico v. Hunter Benn & Co., supra, an appeal was taken from an order refusing to vacate an adjudication. It was sought to have the appellate court review the validity of the decree of adjudication. It was held that, as that decree had not been appealed from, its validity was not open to review.
The propriety of the order of the court below denying the motions to vacate the ancillary proceedings can be reviewed. At the time the motions were made, the property of the bankrupt, with the exception of cash, had been delivered to the trustee, and the stores were in its possession. The services of the ancillary receiver had been performed, and also the services of his attorneys. There remained nothing further to be done except to fix the compensation of the receiver and his attorneys and to have a final accounting. It was then too late to undo what had been done and what had been recognized, acquiesced in, and accepted by the appellants. The granting of the motions would have had no practical effect except, perhaps, to defeat the claims of the ancillary receiver and his attorneys for compensation, and that seems to have been their only purpose. We think that, in denying the motions to dismiss and vacate, the court exercised a proper discretion.
It is claimed that the applications for allowances should have been made to the court of original jurisdiction, and that the court below was without authority to make them. The extent of the jurisdiction of a court which appoints an ancillary receiver to aid the receiver or trustee of the court of bankruptcy to deal with the property of the bankrupt, has not been definitely determined. In an equity receivership, the rule is that ordinarily the court of ancillary jurisdiction, in the interests of uniform administration and equitable distribution of assets, will remit all assets under its control, after deducting the expenses of the receivership, to the court of primary jurisdiction. 53 C. J. 408; Lewis v. American Naval Stores Co. (C. C. A.) 119 F. 391; Shinney v. North Am. Savings, etc., Co. (C. C.) 97 F. 9; Sands v. Greeley & Co. (C. C. A.) 88 F. 130; Central R. & Banking Co. v. Farmers' Loan & Trust Co. (C. C.) 113 F. 405, affirmed (C. C. A.) 125 F. 1001; Pfahler v. McCrum-Howell Co. (D. C.) 197 F. 684. In Great Western Mining & Mfg. Co. v. Harris, 198 U. S. 561, 577, 25 S. Ct. 770, 775, 49 L. Ed. 1163, the court said: "It is true that the ancillary receiverships are generally conducted in harmony with the court of original jurisdiction, but such receivers are appointed with a view of vesting control of property rights in the court in whose jurisdiction they are located." See, also, Sterrett v. Second National Bank, 248 U. S. 73, 39 S. Ct. 27, 63 L. Ed. 135.
In the absence of any indication to the contrary, it is not unreasonable to suppose that the ancillary jurisdiction granted by the Bankruptcy Act was intended to correspond in a general way to that recognized in equity proceedings. It is suggested that the cases of Lazarus, Michel & Lazarus v. Prentice, supra, Isaacs v. Hobbs Tie & Timber Co., 282 U. S. 734, 51 S. Ct. 270, 75 L. Ed. 645, and Straton v. New, 283 U. S. 318, 51 S. Ct. 465, 75 L. Ed. 1060, indicate that even a court of ancillary jurisdiction can only assist in the administration of a bankrupt's assets "in order that the same might be turned over to the bankruptcy court having jurisdiction for administration" (Lazarus, Michel & Lazarus v. Prentice, supra, page 267 of 234 U. S., 34 S. Ct. 851, 852) without any deduction for the expenses of the ancillary proceedings. The Supreme Court, in the Isaacs and Straton Cases was dealing, not with courts exercising ancillary jurisdiction, but a jurisdiction in conflict with that of the bankruptcy court. Lazarus, Michel & Lazarus v. Prentice, supra, deals with the question of attorneys' fees for services rendered in contemplation of bankruptcy, and not with fees for services rendered in connection with ancillary proceedings. In the case of Isaacs v. Hobbs Tie & Timber Co., supra, it was, in effect, held that, without the consent of the bankruptcy court, other courts may not exercise jurisdiction in cases affecting the property of the bankrupt. A court of ancillary jurisdiction, however, is acting in aid of an officer of the court of original jurisdiction, and is presumptively at least acting with the consent of that court or at least not in conflict with its jurisdiction. It has generally been held that a court exercising ancillary jurisdiction in bankruptcy may provide for the compensation of its officers. Loeser v. Dallas (C. C. A.) 192 F. 909; In re Isaacson (C. C. A.) 174 F. 406; Fidelity Trust Co. v. Gaskell (C. C. A.) 195 F. 865, 874; In re Concentrated Products Corporation (C. C. A.) 38 F.(2d) 745; Butler v. Ellis (C. C. A.) 45 F.(2d) 951. See, also, Emerson v. Castor (C. C. A.) 236 F. 29; In re Einstein *561 (D. C.) 245 F. 189; In re Meyer & Judd (D. C.) 1 F.(2d) 513; In re Rodgers & Garrett Timber Co. (D. C.) 22 F.(2d) 571; In re Mill Iron Construction Co. (D. C.) 56 F. (2d) 248. Compare, Tidewater Plumbing Supply Co., Inc., v. Schimmel (C. C. A.) 296 F. 459, 461; In re Patterson Lumber Co. (D. C.) 247 F. 578.
We are of the opinion that the court below was within its rights in fixing the compensation of its receiver and his attorneys, and we think that that is particularly true in this case, where it was invited by the appellants to do so.
It is also claimed that no notice of the application for the allowance of fees was given to creditors as required by section 48e, and section 58 of the Bankruptcy Act, 11 USCA § 76 (e), and § 94. We feel justified in declining to consider this claim in so far as it affects the orders for partial allowances made on February 19, 1931. It is true that these orders were made by the special master, but no appeal was taken from the orders and no complaint made about them until the master's report upon the final allowances was excepted to. The final allowances were made upon notice to the trustee and to a creditors' committee of the bankrupt. The notice was that which the appellants represented to the court, by a verified petition, would serve every practical purpose and would save delay and expense. We agree that notice to creditors substantially as required by the Bankruptcy Act was necessary (Butler v. Ellis, supra; In re Concentrated Products Corporation, supra), but there is nothing before us to show that the notice given did not serve every purpose that notice to each creditor would have served, nothing to show that the creditors were not as well and vigorously represented at the hearing as they would have been had the required notice been given, and therefore nothing to show that any prejudice has resulted to any one because of the failure of the court to see to it that notice should be in exact accordance with the act. The notice given was the notice requested by the appellants and about which they alone complain. We do not feel called upon to send this matter back for the doing of something which, so far as we are advised, would benefit no one.
It is asserted that the allowances to the ancillary receiver were premature, because he delivered to the trustee merchandise and fixtures in kind, so that there was no proper basis for the calculation of the receiver's compensation. The Bankruptcy Act, section 48d, 11 USCA § 76 (d), provides that receivers shall receive "compensation by way of commissions upon the moneys disbursed or turned over to any person * * * by them, and also upon the moneys turned over by them or afterwards realized by the trustees from property turned over in kind by them to the trustees, as the court may allow. * * *" In order, therefore, to determine whether the compensation allowed the ancillary receiver was excessive, we would have to know what the trustee realized from the sale of merchandise and fixtures between the time that they were turned over to him and the time when the allowances were made. The facts upon which the master made his findings and based his recommendation are not before us, and are not agreed to by counsel, so that we cannot pass upon the propriety of the allowances made. We would only be justified in vacating the allowances approved by the master and the court, upon a clear showing that they exceeded the limits permitted.
Since the court disallowed the additional compensation recommended for the attorneys for the petitioning creditors, and the partial allowances made to them are not before us for review, nothing need be said further about such allowances except that, apparently through inadvertence, the court permitted the receiver to take credit, in his final account, for the payment of this additional compensation, regardless of its disapproval.
The appellants also claim that the petitions of the ancillary receiver and his attorneys for compensation do not conform to Order XLII of the General Orders in Bankruptcy (see 11 USCA § 53), in that they were not itemized as required and were not accompanied by an affidavit to the effect that no understanding existed for a division of fees. No claim is made that there was any understanding as to a division of fees or that any prejudice resulted to any one because of any informality of the petitions, and the question of the failure to strictly comply with the rule was not raised in the court below, and will therefore not be considered by us the first time, on appeal. It is particularly important that formal defects in proceedings in bankruptcy be called to the attention of the court of bankruptcy, so that they may be corrected and the expense of appeals based thereon avoided.
*562 It is also asserted that the papers supporting the appointment of the attorneys for the receiver failed to comply with Order XLIV of the General Orders in Bankruptcy (11 USCA § 53). The orders appointing the attorneys were made January 27, 1931, and no appeal was taken from them. They are therefore not before us for review. Moreover, the attention of the court below was never called to this question, and there is nothing to indicate prejudice.
Mr. Schwimmer is said to have disqualified himself from acting as attorney for the ancillary receiver and from receiving any compensation, because he appeared for the petitioning creditors and because he filed a claim in the bankruptcy proceedings for the owners of the store in Joplin, Mo., for rent. Mr. Schwimmer says that the filing of this claim was a formal matter, that he received no fee in connection with it, and that there was no controversy about it. While the case of Weil v. Neary, 278 U. S. 160, 168, 49 S. Ct. 144, 73 L. Ed. 243, calls attention to the abuses which have arisen from the appointment of the attorney for petitioning creditors as attorney for the trustee or receiver in bankruptcy proceedings, the question as to whether he shall act in such a capacity rests with the court appointing him. Mr. Schwimmer should not have acted even nominally for the owner of the store, but there is nothing before us to indicate that he was guilty of anything more than poor taste, and this is another question which was not presented to or passed upon by the lower court.
It is said that the allowances to the attorneys are grossly excessive, and are based, in part at least, upon efforts expended in resisting the trustee's legal right to obtain possession of the bankrupt's property in Missouri, and in part upon administrative, rather than professional, services. The question as to whether the ancillary receiver and his counsel resisted the efforts of the trustee to take over the property is in dispute; the claim of the appellees being that such efforts were resisted by the local creditors. This dispute does not present a question of law, and is not for us to decide upon these appeals. The same is true of the contention that the amounts allowed to counsel were not justified by professional services alone.
The questions of the value of the services rendered by the ancillary receiver and by his attorneys were peculiarly for the special master and the court below, and this court would not be justified in setting aside the determination of the special master, which was approved by the court, unless the allowances were so large as to indicate a clear abuse of discretion, which we think is not the case. Regardless of what evidence the special master may have had before him, it is not before us, and he had knowledge which we do not have as to what the receiver and the attorneys had done and accomplished in the conduct of the receivership, and was therefore in a far better position than we are to say what allowances were reasonable. In re Isaacson, supra; Morse & Tyson v. Irving-Pitt Mfg. Co., supra; In re Curtis (C. C. A.) 100 F. 784; In re Diamond Fuel Co. (C. C. A.) 6 F.(2d) 773.
The court below should have sustained the exceptions of the Irving Trust Company to the inclusion in the final report and account of the ancillary receiver of the $500 additional allowance to the attorneys for the petitioning creditors, which was disapproved on October 12, 1931. The appellees claim that the appeal which was taken from the order of October 30th does not authorize us to consider that question. However, it is apparent that the court did not regard the order of October 10th, allowing the report, as a final order, and that it only became final on October 30th at the time the exceptions of the Irving Trust Company were overruled.
Appeals Nos. 9379, 9380, 9381, and 9382 are dismissed. The orders covered by the other appeals are affirmed, with the exception of the orders of October 30th overruling the exceptions of the trustee and allowing the final report of the ancillary receiver, which orders are reversed only in so far as they fail to sustain the exception of the Irving Trust Company to the additional allowance of fees to the attorneys for the petitioning creditors. Such further proceedings will be taken upon remand as are not inconsistent herewith. The costs on appeal will be divided equally.