**In the Matter of RELIANT GAGES, INC., Bankrupt.**

**No. 62 B 50.**

United States District Court
S. D. New York.
June 3, 1968.

Krause, Hirsch, Gross & Heilpern, New York City, for bankrupt.

Kronish & Lieb, New York City, for trustee for receiver.

WYATT, District Judge.

The Report of Referee Townsend dated May 1, 1968 has been submitted to the Court. The Report deals, among other things, with allowances after final report of the Trustee.

On submission of the Report, the allowances noted therein to Richard W. Sprague, Esq., were opposed by Boice Gages, Inc., a substantial general creditor of the voluntary bankrupt.

The petition was filed in this Court on January 23, 1962, and on the same day Howard Schwartzberg was appointed Receiver.

The bankrupt had conducted its business in Santa Maria in Santa Barbara County; this County was in the Central Division of the Southern District of California until March 1966 after which it has been in the Central District of California.

By order made February 2, 1962, by the United States District Court for the Southern District of California (Northern Division) Mr. Schwartzberg was appointed Ancillary Receiver.

It is said that on the same day there was a petition to the Court in California and that "pursuant to said petition" Robert W. Sprague, Esq., was "appointed counsel", presumably to the Ancillary Receiver. When the order was made (presumably there was an order, see General Orders 44) does not appear.

Apparently the Ancillary Receiver promptly took possession of the assets of the bankrupt in California.

Mr. Schwartzberg, the Receiver and also Ancillary Receiver, was elected Trustee on February 15, 1962.

Immediately upon his qualification the Trustee became vested with *title* to all property of the bankrupt, not affected by the "prior possession of a receiver * * of any court" (11 U.S.C. § 110).

There was no necessity for any ancillary receivership in California after February 15, 1962 and of course no necessity for any services of counsel to the Ancillary Receiver, except possibly preparation of papers for a final report and for "paying * * * the expenses of ancillary administration" (11 U.S.C. § 11(a) (20)).

While Mr. Schwartzberg was both Ancillary Receiver in California and Trustee there after February 15, 1962, and while title to the assets in California was in him as Trustee, there was a period during which possession, care and custody of the California assets was in the California bankruptcy court through Mr. Schwartzberg as its Ancillary Receiver. During this period the bankruptcy court in California as "the ancillary court" had jurisdiction over the Cal-

ifornia assets which had been taken "into its custody" to the extent at least of paying "therefrom * * * the expenses of ancillary administration, and transmitting the property or its proceeds to the court of primary jurisdiction" (11 U.S.C. § 11(a) (20)). It is elsewhere specifically provided that the "ancillary court * * * shall determine and may allow" the costs, expenses, etc. of ancillary receivers (11 U.S.C. § 109(c)). This last provision was enacted in 1938, apparently to legislate the practice approved in In re Schulte-United, 59 F.2d 553 (8th Cir. 1932); see also 11 U.S.C. § 76(a) (4).

In fact, however, the California bankruptcy court did not exercise jurisdiction over the property in its custody to fix the expenses of ancillary administration but, with or without orders, the property was transferred to the possession, care and custody of Mr. Schwartzberg as Trustee without the fixing of the expenses of ancillary administration.

By the end of June 1962, the Trustee had converted to cash all assets in California and had all such cash in his name except for a bank account in California in the name of Mr. Schwartzberg as Ancillary Receiver.

Mr. Schwartzberg as Receiver filed his final report on April 20, 1967. On the same day he filed his final report as Trustee.

Mr. Schwartzberg, as Ancillary Receiver, filed his Final Report (and apparently only Report) in California some time after March 21, 1967. At some time after April 11, 1967 Mr. Sprague filed a petition in California for an allowance as attorney for the Ancillary Receiver.

The bank account in California in the name of Mr. Schwartzberg as Ancillary Receiver stood at $1,319.23 on June 29, 1967 and on that date the account was transferred to him as Trustee.

Thus after June 29, 1967, there was no property in the custody of the California bankruptcy court over which it could exercise any jurisdiction.

At some time after October 11, 1967, Mr. Sprague filed in the United States District Court for the Central District of California a petition "for allowance of fees as local attorney for trustee"; this was entitled in the same caption style as the ancillary receivership.

Why it required some five years to file final reports and petitions for allowances in these matters in this Court and in California is not explained and it is difficult, on the face of the present papers, to see any satisfactory explanation. The able and conscientious Referee in this Court reflects in his Report now under consideration that he was concerned at "the lengthy delay in closing this estate".

Under date of October 13, 1967, Referee Champlin in California gave notice of a "final meeting of the creditors" to be held in San Luis Obispo on October 27, 1967 for the purpose of passing on the Report of the Ancillary Receiver and on the petitions for allowances, including that of Mr. Sprague as "Local Attorney for Trustee". How this notice was given does not appear, nor how the Referee in California knew who the creditors were. Doubtless he had in mind the notice requirement of 11 U.S.C. § 94(a) (8). Be that as it may, no one appeared on October 27, 1967, to object.

On November 14, 1967, Referee Champlin in California made an order allowing the exact amounts for which the petitions asked, namely,

| | |
|---|---|
| Ancillary Receiver | $1,401.72 |
| Mr. Sprague, as "attorney for Ancillary Receiver" | 9,096.43 |
| Mr. Sprague, as "Local Attorney for the Trustee" | 1,000.00 |

Of the $9,096.43 allowed to Mr. Sprague as attorney for the Ancillary Receiver $9,000 was for services and $96.43 for expenses.

Apparently the proceedings in this Court to close the bankrupt estate had been delayed pending the order of the California bankruptcy court.

The final meeting of creditors took place before Referee Townsend on March 28, 1968 and on that date the Trustee filed a supplement to his Final Report which, among other things, set forth the November 14, 1967 order of the Referee in the California bankruptcy court.

Apparently Mr. Schwartzberg as Ancillary Receiver and Mr. Sprague as counsel for the Ancillary Receiver and as "Local Attorney for Trustee" filed applications for allowances in this Court before Referee Townsend. Their applications were for the amounts allowed in the November 14, 1967 order of Referee Champlin in California.

As to these applications, Referee Townsend in his Report states his belief that he is without authority "to overrule or otherwise modify" the order of Referee Champlin in California and therefore makes no recommendations as to such applications. The amounts allowed in California appear in the opening part of the Report in the column "Recommended" but this is either an inadvertence or is on the theory that the amounts are incontestable.

The Referee in my opinion has given the order of Referee Champlin a force it does not have.

 As to the allowance to Mr. Sprague as a "local attorney" (in California) for the *Trustee*, it seems clear that the ancillary court had no jurisdiction whatever to make such an allowance. Expenses of the Trustee, wherever incurred, are within the jurisdiction of the primary court only. As put in 1 Collier on Bankruptcy (14th ed.) 364:

> "Although fees of the general administration of the estate, such as counsel fees, are for the determination of the primary bankruptcy court, the Act clearly gives the ancillary court power to allow the expenses incident to the ancillary proceedings."

This is of considerable importance here because it seems reasonably clear that the great bulk of the professional services of Mr. Sprague were after February 15, 1962 and thus must have been for the Trustee, there no longer being any necessity for any ancillary receivership.

 As to the allowances to the Ancillary Receiver and his counsel, it seems clear that when the ancillary court no longer had property in its custody it no longer had jurisdiction to make any order because its only jurisdiction depended on having property in its custody. This conclusion is reached on principle, no decision having been found. The situation is somewhat like that in *In re Schulte-United*, above, where—before the present statutory provisions were enacted—allowances by an ancillary court for expenses of ancillary administration were upheld. In that case the ancillary receiver and the trustee were not the same, and indeed were in controversy. The ancillary court ordered all property turned over to the trustee "except cash on hand" (59 F.2d at 556), out of which allowances by the ancillary court for expenses of the ancillary administration were later paid. Still later the ancillary court ordered that the ancillary receiver turn over to the trustee all money in his possession "less a sufficient sum to pay all of the expenses of the ancillary receiver in this jurisdiction which may be lawfully allowed by this Court" (59 F.2d at 557). It seems this practice was followed because otherwise the ancillary court could not act.

The November 14, 1967 order of the Referee in California was made without jurisdiction and is of no effect.

The matter must therefore be returned to Referee Townsend to entertain an application by Mr. Sprague for an allowance for all services to the Trustee, and to make recommendation thereon. Referee Townsend may also entertain an application by the Ancillary Receiver for commissions and by Mr. Sprague for an allowance as counsel to the Ancillary Receiver, and may make recommendations thereon. Whether the Ancillary Receiver or his counsel, under 11 U.S.C. § 76(a) (4), may receive any

allowance from this Court seems doubtful but decision on this point is reserved, pending further Report of his recommendations by the Referee.

Decision on the other matters in the May 1, 1968 report of the Referee is reserved, pending his further Report. In this connection the Referee is requested to afford an opportunity to all parties in interest to explain the long delay in this matter, and to make further Report thereon also.

The matter is accordingly returned and referred to Referee Townsend for further proceedings in the light of this opinion.