**KIMM et al. v. COX et al.**

**No. 12001.**

Circuit Court of Appeals, Eighth Circuit.

Sept. 8, 1942.

STONE, Circuit Judge.

This appeal and three other appeals (No. 12,002, 130 F.2d 687, No. 12,003, 130 F.2d 691, and No. 12,004, 130 F.2d 695) are concerned with the bankruptcy of the Calhoun Beach Club Holding Company, a Delaware corporation. Each of these appeals has to do with a separate order in that proceeding. This appeal is from an order (January 2, 1941) denying a petition by four creditors for the removal of the trustee in bankruptcy (Harold W. Cox) and his attorneys (Oscar A. Brecke and Benedict Deinard) and for return to the bankrupt estate of all fees "heretofore allowed and paid them, or which might be paid them herein." Appeal No. 12,002 is by the same four creditors and Harry S. Goldie from an order (January 2, 1941) allowing attorney fees ($2,000.00) to the above counsel for the trustee for services from September 23, 1938 to March 21, 1939. Appeal No. 12,003 is by Harry S. Goldie from an order (January 2, 1941) denying an amended claim of Harry S. Goldie for services and disbursements ($5,-618.55) as preferred administrative expenses. Appeal No. 12,004 is from an order denying two amended general claims (Nos. 184 and 185) of Harry S. Goldie ($26,406.-26 and $26,761.59, respectively) except for an item of $8,000.00 on bonds (in claim No. 184) which is not involved in the appeal.

### Historical Statement.

While each of these appeals must be determined separately upon the facts particularly applicable thereto, yet it is useful, to avoid some repetition, to make here a brief outline statement of certain matters of historical background. In 1926, the Calhoun Beach Holding Company (a Minnesota corporation and hereafter called "Holding Company") owned certain vacant lots advantageously located in the lake district of Minneapolis. Harry S. Goldie and two associates owned a majority of the capital stock and Mr. Goldie was the dominating influence. It was planned to develop this property by building thereon a combined club and apartment building. To carry out this plan, the bankrupt (Calhoun Beach Club Holding Company, a Delaware corporation) and the Calhoun Beach Club (a non-profit Minnesota corporation and hereafter called "Club") were incorporated in the autumn of that year. Mr. Goldie owned a majority of the capital stock of the bankrupt and was the dominating personality therein. The

Seth Lundquist, of Minneapolis, Minn. (D. J. Shama, of Minneapolis, Minn., on the brief), for appellants.

Benedict Deinard, of Minneapolis, Minn. (Oscar A. Brecke, of Minneapolis, Minn., on the brief), for appellees.

Before STONE, WOODROUGH, and JOHNSEN, Circuit Judges.

plan contemplated acquisition of the above land by the bankrupt which was to construct, equip and maintain the building for the exclusive use of the members of the Club.

The method for financing was through Club membership fees and later through money from a bond issue and from sale of stock in bankrupt. To procure membership in the Club and the resulting fees, the Club made a contract (December 11, 1926) appointing the Bankrupt to conduct a membership campaign, bankrupt to bear expenses thereof and to receive 15% of such membership fees as its pay. This contract provided for placing the 85% of such Club fees in trust and that, when such trust fund should equal $255,000.00 and the bankrupt should turn over to Club an acceptable agreement to furnish the necessary balance to construct and open the Club, the trust fund and later membership fees should be turned over to bankrupt and it would construct, maintain and operate the Club building. Provision was made, also, for earlier termination of the trust and handing over of the fund to bankrupt. About two months later, these contracts were altered to allow 20% instead of 15% of membership fees as compensation. In turn, bankrupt made contracts employing Mr. Goldie to carry out the above contract (and later the altered contract) on the same terms in so far as securing membership in the Club. The membership campaign proceeded producing cash and notes. In May, 1927, the trust was terminated and the trust fund directed turned over to bankrupt.

Construction by bankrupt began about August 1, 1927, with the Fleisher Engineering and Construction Company as general contractor. In the spring of 1928, negotiations began between bankrupt and H. O. Stone & Company to secure a bond mortgage loan to complete the construction. As a result thereof, the latter agreed to a loan issue of $1,075,000.00 (divided in two issues of bonds); the mortgage deed of trust was registered October 15, 1928. There seems to have been suspensions of work during the summer and autumn of 1928; and, after September 25, 1928, the work proceeded, under another general

contractor (Joseph A. Holpuch Company), until the final suspension about December 1, 1929—at which time the superstructure, walls and roof were in place. The Joseph A. Holpuch Company had given a contractor's bond to complete the work, with the Fidelity and Casualty Company of New York as surety. This suspension seems to have been caused by failure of H. O. Stone & Company to continue and complete payments for bonds purchased, or to be purchased, by it. The cause for such failure is disputed but not here material.

After this suspension of work, the history of this matter is one of various litigations. A number of mechanics' liens were filed and an action in the State district court to foreclose thereon was filed December 11, 1929. May 27, 1931, judgment went allowing liens to a large total and ordering foreclosure sale of the property in satisfaction. Except the relatively small amount of two claims, the liens were adjudged prior to the bond deed of trust. Sale was confirmed August 20, 1931, to the purchasers who were the prior lien judgment creditors.[1] On the date (August 20, 1932) of expiration of the statutory redemption period, the bankrupt and the Holding Company began an unsuccessful action in the State court to set aside the above lien judgment and sale.[2]

In September, 1932, an unsecured judgment creditor of bankrupt began an action in the State court for appointment of a receiver for bankrupt. While this case was pending on continuance, members of a Chicago law firm with an unsatisfied judgment for fees filed, on October 11, 1932, an action in the United States Court for the District of Minnesota for appointment of a receiver for bankrupt. The same day, consenting answer was filed by bankrupt and an order entered appointing Charles B. Cooper as receiver. He qualified the following day.

Four days later (October 15, 1932) an involuntary petition in bankruptcy was filed against bankrupt. Bankrupt filed an answer challenging the jurisdiction but this was later withdrawn and adjudication had on December 12, 1932, and the matter referred to the referee. February 20,

---

[1] The two claims, adjudged junior to the deed of trust, were the only appellants from this judgment. Minneapolis Builders' Supply Co. v. Calhoun Beach Club Holding Company, 186 Minn. 635, 244 N.W. 53.

[2] This case was tried November 9, 1932, resulting in a judgment for defendants, which was affirmed on appeal. Calhoun Beach Holding Company et al. v. Minneapolis Builders' Supply Co. et al., 190 Minn. 576, 252 N.W. 442.

1933, Paul E. Von Kuster was appointed receiver in bankruptcy in order that an action might be filed that day against the Fidelity and Casualty Company of New York, as surety on the above contractor's bond of Joseph A. Holpuch Company—haste in this action was necessary to avoid the bar of limitations. At the first meeting of creditors (April 28, 1933), Harold W. Cox was, without objection, appointed trustee by the referee (there being no agreement on a trustee by the creditors) and later was substituted for Von Kuster as plaintiff in the suit on the bond. The bond suit resulted in the recovery of $31,001.89, which, with either $10.00 or $20.00 otherwhere collected by the trustee, constitutes the entire assets of the estate. Numerous claims, aggregating many thousands of dollars have been allowed with no dividend payment thereon and, so far as we are informed, with no prospect of further collection of assets. So much for the historical outline of the general situation. We pass to consideration of this appeal.

## I. Removal Proceedings.

Prior to the filing of the present removal proceedings, there had been three earlier like proceedings. The first removal proceeding was begun (December 6, 1935) by a petition of six creditors (A. P. Kimm, Fred E. Andersen, Hennepin Transfer Co., B. G. Shapiro, N. W. Remole and J. H. Kammerdiener) praying removal of the trustee and his attorneys (Benedict Deinard and Oscar A. Brecke) and for disallowance of their fees. The matter was referred to the then referee (Alexander McCune) as special master. After full hearing the special master reported, with recommendations against removal and against forfeiture of fees. On review, the Court adopted the recommendations against removal and against forfeiture of fees of the trustee; but disapproved the recommendation against forfeiture of fees of the attorneys. The action of the Court as to attorney fees was based on failure to comply with General Orders 42 and 44 and local Rule 10. This order of the Court (July 22, 1937) required refund of $3,000.00 attorney fees theretofore paid. August 12, 1937, Brecke and Deinard filed a joint "petition and motion for rehearing" attacking that portion of the order denying their fees. Therein, among other things, they charged error in failing to hold that the order was without prejudice to an

application for fees by them upon compliance with the General Orders and the Rules of Court and in failing to return the report to the referee for a corrected and supplemental report upon the filing by them of a proper petition and affidavit in accordance with the General Orders and the Rules if they could be properly made. January 24, 1938, an order was entered: "that the prayer of the respondents for rereference to the Referee be granted; that the case be referred to the Hon. Alexander McCune, Referee in Bankruptcy, for consideration of any presentation which respondents may make affecting their effort at compliance with the General Orders in Bankruptcy and local bankruptcy rule 10, and to act thereon in its relation to the subject matter of fees as in his judgment seems fitting."

From this order, an appeal was sought in this Court. This was opposed on the ground that such order was not a final order but purely intermediate and preliminary—not determining the rights nor disposing of the controversy between petitioners and respondents—and, therefore, not appealable. Appeal was denied. There was no appeal from those portions of the order of July 22, 1937, denying removal and denying forfeiture of the trustee's fees.

The second petition for removal was by Goldie (as sole petitioner), filed before the referee on January 14, 1939, and denied by him on January 20, 1939. No review of this denial was sought. Three days later (January 23, 1939), Goldie filed the same petition in Court. Respondents filed motion to strike this petition as "sham, frivolous, impertinent and scandalous." After denying a motion by Goldie to continue until after determination by the referee of a pending motion to reopen and deny certain claims filed by Goldie and after affording opportunity to offer evidence in support of the petition, the Court denied a motion by Goldie to dismiss the petition without prejudice and entered an order denying the petition and striking it from the files. A petition for appeal made to this Court was denied.

### This Removal Proceeding.

*The Petition.* June 28, 1939, four general creditors (A. P. Kimm, J. H. Kammerdiener, N. W. Remole and Fred E. Andersen), whose claims had been allowed, filed a joint petition praying removal of the trustee (Harold W. Cox) and of his attor-

neys (Oscar A. Brecke and Benedict Deinard); forfeiture of all fees paid "or which might be paid them"; and an accounting and restoration of all such fees as had been drawn from the estate. This petition is quite long and involved but an outline of its essentials may be stated as follows.

Statement of interest of petitioners and appointment of Mr. Cox, as trustee, and of Mr. Oscar A. Brecke and Mr. Benedict Deinard as his attorneys—such appointment of attorneys being under order of the referee of May 22, 1933. Allowance of fees of $11,000.00 to Brecke and Deinard on November 15, 1935. Outline of the above first removal proceedings (filed December 6, 1935) and of resultant proceedings.[3]

Further the petition sets forth the history of events leading up to the voluntary dismissal (February 15, 1939) of the appeal (taken on October 22, 1938) as follows. Harry S. Goldie had, prior to November 9, 1935, filed a petition for allowance of $3,277.35 as administrative expenses and, about the above date, two amended claims ($26,406.26 and $26,761.59) aggregating $53,167.85. On November 13, 1935, Mr. Goldie and his counsel and the trustee and his counsel entered into a stipulation of compromise and settlement of these three items, with "the full knowledge and express consent and approval" of the then referee (Alexander McCune). This stipulation provided for allowance of the administrative expense for $1,500.00 and of the two general claims for $50,000.00; that such allowances should be in full settlement of all claims of any kind by Mr. Goldie; that the stipulation was made subject to approval of the referee; and that if allowed by the referee, the parties agreed to accept such in "full compromise and settlement of the matters in dispute in connection with said claims". The referee had endorsed his approval on each of said two "claims" for $25,000.00. On January 4, 1936, shortly after the hearings by the referee on the first removal proceeding, the trustee and his counsel filed a petition for leave to withdraw from the above stipulation "in so far as the same relates to the allowance of the so-called priority claim in favor of Harry S. Goldie in the sum of $1500.00." About three years later (December 13, 1938) and while these petitioners were working on their above appeal, the trustee filed a petition for leave to withdraw from the stipulation as to the two general claims. Both of these petitions were in retaliation and reprisal against these petitioners and Goldie on account of the removal and fee proceedings. There was a creditors committee representing some 90% of the unsecured claims. This committee included the petitioners in the first removal proceeding (as also the present petitioners) and Mr. Goldie was chairman. The situation, as viewed by the committee at this time, was that their effort and expenditures in connection with the removal proceedings were considerable; that many unsecured creditors needed dividends; that the attitude of the trustee and his counsel was very "bellicose" toward the committee and its

---

[3] This outline included statement of two main issues raised; testimony of Brecke and of Deinard as to their former representation of the bankrupt; finding of referee concerning issue covered by such testimony; hearing before referee and resultant recommendation to deny petition in toto; hearing, on exceptions, before Judge Joyce; order of Judge Joyce (July 22, 1937) sustaining recommendation of referee as to denial of removal and overruling referee as to allowance and restoration of fees (the order requiring disallowance of all fees and restoration of such as paid to Brecke and Deinard); application for rehearing and re-reference by Brecke and Deinard granted; rehearing thereon by Judge Joyce; position taken by Brecke and Deinard at such hearing; order granting re-reference "for consideration of any presentation which respondents may make affecting their effort at compliance with the General Orders in Bankruptcy and local bankruptcy Rule 10, and to act thereon in its relation to the subject matter of fees as in his [the referee] judgment seems fitting"; petition of trustee (for nunc pro tunc amendment of order of referee (May 22, 1933) authorizing employment of Brecke and Deinard so as to restrict it to prosecution of the bond suit and for authority to employ them "now" for the purpose of closing the estate "under a general retainer") filed, heard and allowed; new application for fees, by Brecke and Deinard, to cover services in bond suit; order allowing fees of $7,750.47 in the bond suit and $200.00 for representing petitioner filing involuntary petition on which bankruptcy adjudicated; petition for rehearing of such allowance order; hearing and denial thereof; and appeal (Oct. 22, 1938) from this and other orders.

chairman; that Deinard stated they would war on Goldie and his claims until he would not recover a cent; that the "only way to get the estate closed and to maintain the settlement stipulation aforesaid in force, was to have the said appeal voluntarily dismissed"; that the committee "sensed, as it then seemed," a desire of Deinard to get an immediate termination of the bankruptcy proceeding; and that Brecke had repeatedly said he would be glad to see the appeal dismissed as its pendency was the only obstacle to ending the fight on Goldie and closing the estate and as he badly needed the fee. Late in December, 1938, the Court called a conference of various counsel stating to them that he had received various inquiries from creditors as to when the estate would be closed and they would receive any dividends. The conference resulted mainly in an exchange of views. There were subsequent conferences of the Court with members of the committee and with the trustee and his counsel and one conversation between a member of the committee and Brecke. A meeting of the committee occurred shortly before (February 15, 1939) and three members thereof met the Court that day and reported in detail the proceedings of the committee and of its secretarial representative. In the meanwhile, a hearing was going on before the referee on the above petitions to withdraw from the stipulation concerning the Goldie claims. In the above series of conferences and contacts, the committee and Goldie were "definitely assured" by the trustee and his counsel that the appeal could be "safely" dismissed; that, since such dismissal would inure to the benefit of such counsel, concessions would be made in order to bring about immediate closing of the estate; that appellants could "safely" rely upon such assurances; that adjustments and allowance of all fees would be left to the Court with recognition of the view of appellants and of the committee that some reduction should be made in the fees involved in the appeal; that counsel for the trustee would press for no further fees, or at most for a nominal amount; and that the trustee and his counsel would "lay aside all animosity and would cooperatively proceed forthwith to bring the bankruptcy administration to immediate terminus."

"In sole reliance on said assurances by respondents, and not otherwise, the said appellants, petitioners herein, thereupon, on or about February 15, 1939, caused said appeal to be dismissed, and would not have done so save for such assurances of respondents and the trusting reliance of said appellants thereon. Said dismissal, moreover, was made in the belief, induced by respondents' said assurances, that the interests of the bankruptcy creditors would be greatly served thereby through resultant saving of expense of administration and the closing of the estate forthwith." The order of dismissal was entered in the appellate court about March 2, 1939, and mandate issued. Meanwhile, the above proceedings before the referee had been discontinued.

About March 4, 1939, and immediately upon receiving notice of such dismissal, the fee of $7,950.47 and items of administrative expense disbursements ($107.25) were paid out to counsel for the trustee without notice to these petitioners or their counsel. Such "secret" payment was in violation of the understanding with the committee and petitioners and a breach of faith. Petitioners first had knowledge of such payment shortly after April 12, 1939, when they received a notice from the referee of a meeting of creditors—the notice listing such among the trustee's disbursements.

Between the dismissal of the appeal and the date for the creditors' meeting (April 24, 1939), Goldie had prepared exhaustive data as to the items in his claims. This was done at the suggestion of Brecke, acting for the trustee and his counsel, and in accordance with specific directions which Brecke outlined and represented as sufficient to satisfy the technical requirements, as he represented, of his associates, so that the evidential submissions might be therewith completed as a matter of mere formality to obtain a pursuant order from the referee denying the petitions for leave to withdraw from the stipulation of settlement of such claims. In that connection, Brecke repeatedly promised to inform the referee that the trustee and his counsel "were now satisfied from said check-up on the said claims" that the stipulation should stand as a settlement "in the best interest of the Estate" leaving for adjudication only the issue of law (raised in the second petition for leave to withdraw) as to whether any of such claims should be subordinated to creditors holding bonds of the bankrupt guaranteed by Goldie. To

728

the contrary, the trustee and his counsel urged the referee to set aside the stipulation of settlement and procured an order from the referee to that effect on April 22, 1939.

Beginning with the date of meeting of the creditors, April 24, 1939, the trustee and his counsel have waged war on the committee, their counsel, Goldie and his claims at great expense to the estate. Such expense being occasioned by their "perfidious scheme, determination and conspiracy to defeat the claims which they previously had settled and adjusted by stipulation." "The configurations of such perfidy and betrayal arise from a startling pattern of circumstances and testimonial developments in the instant proceedings before Referee Newton." One instance is the accusation by Deinard that Goldie is attempting to evade the implications of liability to the bankrupt for $25,525.08 (involving a release from that liability), without disclosing that Deinard's law firm was employed and paid by Goldie in connection with that release and advised correction of the bankrupt's books to show such. Such deliberate concealment, by the trustee and his counsel, of material evidence in their knowledge and possession is a "brazen attempt to delude and deceive the court and to prostitute the orderly processes of law in their schemed determination to defeat the ends of justice." A further instance is the failure to produce office files, etc., concerning services to Goldie under a subpoena duces tecum against Deinard and his law partners; and their testimony as to the existence thereof—leading to the conclusion that Deinard "has deliberately suppressed, concealed or destroyed evidence at all pertinent times in his possession or under his control, material to the issues involved."

A few days prior to April 24, 1939, "in the course of a circumstantial examination of said judgment roll" of the above mechanics' liens foreclosure suit, petitioners first discovered a certain stipulation therein which was out of its normal place. This stipulation shows Deinard's law firm as attorney for two lien creditors (one holding undelivered property of the bankrupt), Brecke as attorney for three creditors, and Brecke and Deinard as attorneys for the bankrupt. The papers in the foreclosure and subsequent litigation make clearly apparent "a fundamental conflict of interest has at all times existed, since said foreclosure, between the bankrupt and its various creditors concerned in said litigation and the subject matter thereof." Because of this concealment, the trustee and his counsel should be removed, required to restore fees paid, all other allowances be set aside, and held for damages to the creditors. It was misconduct against the Court to remain silent as to this fact in the hearing before the referee in the first removal proceeding.

Not only did the trustee and his counsel so conceal and suppress, but Brecke and Deinard each testified (in the first removal proceeding) that neither had ever represented the bankrupt except in a "single isolated occasion" in connection with a motion involving appointment of a substitute trustee under a trust deed covering the bond issue on the bankrupt's property. Such testimony was perjury and res judicata does not apply to prevent introduction of this stipulation in this present proceeding—as ruled by the referee.

Apparently for the purpose of showing that there yet remains much to be done before the estate can be closed, several matters[4] are stated in paragraphs 46 and 47 of the petition. The conclusion is

4 These matters were as follows:
"46 * * * On June 7 and 8, the Referee made four orders: (1) allowing said Brecke and Deinard $2,000.00 on their $2,500.00 fee application, covering services for six months, ending March 21, 1939; (2) allowing attorneys Elliott and Lundquist $843.78 on their $2,000.00 fee application; (3) denying in toto said Goldie's administration expense claim; and (4) allowing the trustee's account as rendered. Said account, among other things, fails to credit interest on some $26,000.00 for 22 months, or any interest on the $3,000.00 which respondents withdrew on August 18, 1935, split

between themselves, and retained for almost 32 months before returning the same to the bankruptcy estate. Petitions for review have been filed in each instance. Meanwhile a 4% dividend has been declared and hearing set for June 29 on the trustee's certain petition for instructions relative to pay-outs of such dividends.

"47. Much unfinished business remains, with months and months of continued litigation in sight, if [respondents] remain in control. Claim No. 26 should be reduced $13,500.00, being factually excessive by said amount, but said Brecke represents said claimant. and the trustee

stated that "the interweaving interests of the respondents and their private clients are such that·there is no possibility under existing conditions of securing impartial administration of the bankrupt's estate and prompt and proper closing thereof."

*Reference.* An order of reference to Walter H. Newton (who had succeeded Mr. McCune, resigned, as referee) was made, which contained the provision following: "The said Referee may in his discretion limit the scope of said hearing to the new matter only, set up by the petitioners, and the issues thereby created, counsel for the petitioners having heretofore advised the court that the essential parts are embodied in paragraphs 33 to 45 and in photostat exhibits 'E' to 'H' of said petition."[5]

*Answer.* The day following the reference order, a joint answer was filed with the referee by the trustee and his counsel, Brecke and Deinard. The answer is extensive—answering the paragraphs of the petition separately. The substance thereof is as follows. A plea of sole jurisdiction in the referee under an earlier general order of reference and under the·Chandler Act. A plea of res judicata based on the statement that all matters in the present petition were covered and determined in the first removal proceeding and have become final. That the first removal petition was, in fact, the petition of Goldie and filed to assist him in an effort to secure from Brecke and Deinard a portion of their allowance of fees and that this was found therein by the referee, sustained by the court and has become a final adjudication thereof. Admit that Brecke and Deinard and Deinard's law firm (Leonard, Street and Deinard) represented certain lien claimants in the mechanics' lien foreclosure suit. Admit that Brecke and Deinard testified, in substance, in the first removal proceedings, that the only service ever performed by them as attorneys for the bankrupt comprised an appearance in an application to substitute a trustee in the bond trust deed. Admit the allegations as to the order of July 22, 1937, and filing application for rehearing. Answering the allegation as to their position on the application hearing, say they "asserted that they could comply with the requirements of the General Orders and the Rules of this court, and allege" that they have done so. Admit petition for and allowance of petition for nunc pro tunc order amending order for their employment of May 22, 1933. Admit filing application for fees, that objections were filed thereto, that allowance thereof was made in sums stated in petition, that rehearing was denied, that appeal was taken and that record on appeal was transmitted to Court of Appeals.

Admit filing of the two amended general claims and of claim for administrative expense by Goldie; that stipulation for allowance thereof was made, with approval of referee (McCune) "for the purpose of disposing amicably of.said unsecured claims and said petition, without putting said estate to the delay and expense of extended litigation and trial, and with the object of permitting the estate to be promptly closed, so that the creditors whose claims had been filed and allowed might promptly receive their dividend on liquidation"; and that allowance was "endorsed" thereon by the referee (Nov. 15, 1935) "but no formal order of allowance" was ever entered. Deny that any data supporting the claims was submitted to the referee prior to 1939. Admit filing petitions to withdraw from above stipulation concerning Goldie claims and to contest same on merits. Deny purpose of such petitions was other than to protect estate against "unjustified claims" and to assist in due and proper administration of estate.

Deny that Benedict Deinard was ever employed by Goldie but allege that Amos Deinard, of the firm of Leonard, Street and Deinard, was employed by L. I. Sutterman, J. R. Mendelson, the bankrupt and Goldie "to perform, and did in the year 1929 per-

refuses to move for and re-consideration of said claim. The trustee and his attorneys refuse to make any report or accounting on the Findley material or on the material taken from the bankrupt by Brecke's client Conners."

[5] Exhibits E to G were bills for legal services by Leonard, Street and Deinard respectively directed to "Mr. Harry Goldie, Leonard Sutterman, and Calhoun Beach Holding Company", to "Mr. Harry Goldie (Joint Account with Mr. Leonard Sutterman and Mr. J. R. Mendelson and Calhoun Beach Holding Company)", and to "Mr. Harry Goldie (Joint account with Calhoun Beach Holding Company, and Messrs. Sutterman and Mendelsohn)." Exhibit H was the stipulation (in the mechanics' liens suit) hereinbefore stated in the petition. Both Benedict Deinard (one of the counsel for the trustee) and his brother Amos were members of the above law firm.

form certain services with respect to said Calhoun Beach Club building enterprise."

Alleges that the bankrupt, through Goldie and "in the names of certain persons masquerading as a creditors' committee," solicited claims in the name of George C. Stiles (counsel for bankrupt between filing of involuntary petition and adjudication) and that Stiles endeavored to vote such at first meeting of creditors in an attempt to control estate but was prevented on objection that claims were solicited. "Admit and allege that thereafter in the year 1935, said Goldie organized or reorganized a purported creditors' committee, consisting of certain of his friends and associates masquerading as a committee representing creditors, under the name of 'Creditors' Committee, Calhoun Beach Club Holding Co., Inc., Bankrupt,' and caused the same to solicit representation of claims, including the aforesaid claims solicited in the year 1933, on the basis of receiving 50 per cent of all additional sums receivable by claimants on account of any reduction that could be procured in allowance to the trustee and his attorneys, and caused the aforesaid removal petition to be filed in the year 1935, in the names of certain of the members of said purported Committee. Specifically deny that said Committee was formed by the action of any creditor aside from said Goldie, and certain of his friends and associates interested in the espousal of his claims; admit and allege that in response to said solicitation, said purported Committee received powers of attorney signed by certain [cerditors], and entered into champertous and unlawful agreements with them on the basis aforesaid; admit and allege that thereafter in the year 1936, said purported Committee solicited certain of said creditors to execute orders or assignments transferring to said Committee a portion or fraction of the dividends to be received by them upon their claims, and in fact received certain of such orders and assignments upon the champertous and unlawful agreements aforesaid. Specifically deny that said purported Committee was organized to protect the interests of any of the creditors aside from said Goldie. Allege that on or about March 1, 1939, the trustee was served with a purported 'Notice of Substitution of Attorneys-in-Fact', addressed to the Referee and to the trustee, signed by said George C. Stiles, wherein by reference to a schedule containing a listing of the claims of numerous creditors, said George C. Stiles purported to consent that one A. P. Kimm and Seth Lundquist, Esq. should appear in his place as attorneys-in-fact and representatives of all of said claimants, and that any dividends payable under or in connection with said claims should be forwarded to said A. P. Kimm and Seth Lundquist, Esq. as such representatives of said claimants, without prejudice to the attorney's lien of O. J. Ertsgaard, Esq., and to the lien of said George C. Stiles against the claim of said Goldie, and wherein said A. P. Kimm and Seth Lundquist assert that they now appear as attorneys in fact and representatives of each of said claimants in place of said George C. Stiles. Respondents are informed and verily believe that said A. P. Kimm is the person who has been denominated Secretary of said Committee, and that he is not an attorney-at-law, and that said Seth Lundquist is acting as the attorney for said purported Committee, and that said O. J. Ertsgaard was formerly an attorney for said Golding; and that said 'Notice of Substitution of Attorneys-in-Fact' was prepared, served, and filed for the purpose of effectuating said champertous and unlawful agreements, and with the design of affording said Kimm and Lundquist an opportunity to receive and negotiate the dividend checks payable to creditors. Allege that the trustee has filed his Petition for Instructions with respect to the persons to whom said dividend checks shall be made payable and the persons entitled to receive the same, and that the Referee has issued his citation to creditors thereon, and that a hearing thereon was duly set for June 29, 1939."

Admit orders, alleged in petition, on first removal proceedings and allowance of attorney fees of $7,950.47. Allege payment of dividends withheld because of impossibility to close estate while such proceedings pending.

Deny statements concerning dismissal of appeal attributed to Brecke and Deinard except that Brecke stated the pendency of the appeal necessarily suspended closing of estate. Admit conference of counsel with Judge Joyce and discussion of situation of estate. Allege that trustee and counsel stated there that, if appellants dismissed the appeal, they would reserve full freedom of action; they would consider Goldie claims on merits without any personal bias; and Brecke stated he would accept reasonable fees for general service to estate taking into account prior allowance. Deny all allegations in petition as to statements by

them that appeal could be "safely" dismissed; that they would not oppose Goldie claims; that they would consent to reduction of allowed fees; or would accept less than reasonable fee for general services to estate.

Admit receipt of allowed fees and disbursements but deny any secrecy or any violation of understanding.

Admit Brecke conferred with counsel for Goldie with reference to preparation of schedules and tabulations of such claims, pursuant to instructions from referee that such be prepared to shorten trial thereon. Deny Brecke represented that such tabulations would satisfy requirements of proof, or that presentation of claims would be mere formality, or that referee would deny petition to reopen claims or that Brecke would recommend such; and allege such were prepared after petition had been granted and such claims ordered re-examined. Admit draft of such order by Brecke at request of referee after announcement of such in open court. Admit and allege report of auditor, employed by bankrupt, and books of bankrupt show an indebtedness of Goldie to bankrupt of $25,525.08 never credited on claims.

Admit services by Amos Deinard (of Leonard, Street and Deinard) (between December 1, 1928 and October 16, 1929) to bankrupt, Goldie and others in connection with Calhoun Beach Club enterprise and letter suggesting that books of bankrupt show the above amount ($25,525.08) "wiped out" in accordance with intention of Club minute book entry of February 7, 1927.

Admit issuance of subpœna duces tecum and allege that all matters called for were produced and in court at that time except file of correspondence with Messrs. Mendelson and Sutterman, produced later.

Admit existence of stipulation (Exhibit H, showing representation by Brecke or Deinard of various creditors and of the bankrupt, in the mechanics' lien foreclosure suit) and representation shown therein. Allege it has been in the judgment roll of that suit since 1932 and that such judgment roll was introduced in the first removal proceedings. Deny any concealment thereof in judgment roll and allege it was bound therein by the court clerk "in its customary and appropriate place." Deny any concealment of existence of this stipulation. Admit and allege that they have objected to introduction of such stipulation on proper grounds that it has been in judgment roll since 1932 and such roll was introduced in first removal proceedings and such objections have been sustained.

Admit that Brecke and Deinard testified, in first removal proceedings that the only legal services performed for bankrupt by them was an appearance to an application to appoint a substitute trustee in the bond deed of trust. Deny that they "wilfully testified falsely to any fact upon said proceeding."

Admit certain matters yet pending and consent that claim No. 26 be re-examined if Goldie or his counsel will indemnify estate against loss by increase of the claim upon reexamination.

*Reply.* As to the jurisdictional defense, aver that this matter was referred to the referee before answer was filed. As to defense of res judicata by first removal proceedings, deny that all matters set forth in this petition were included in the first removal proceedings or became res judicata; allege petition contains "new matters arising since" disposal of the first proceedings; allege that matters concealed by respondents and wholly unrevealed in the first removal proceedings formed no part or substance of the adjudication therein; that it was the duty of respondents to reveal existence of the stipulation (Exhibit H) in the first removal hearing, but they concealed same and deliberately testified falsely as to their employment. Aver that the original letter (February 26, 1929) from Leonard, Street and Deinard to Goldie (concerning amendment of bankrupt's records to show "wiping out" of indebtedness of Goldie of $25,525.08), which had been introduced by Goldie in the first removal proceedings, had been abstracted from the clerk's office and secretly withheld by respondents during the hearing on Goldie's claims and was not produced in response to the subpœna duces tecum but was later produced by Deinard from his files. As to reexamination of claim No. 26, that Brecke is attorney both for the claimant and the estate.

*Referee's Findings.* After full hearing, the referee filed (September 1, 1939) an extended and detailed report of his findings. The results stated in the report were as follows. The referee found that Goldie caused the formation of the "Creditors' Committee".; caused the first removal petition to be filed; caused that proceeding to be had; and was the moving spirit therein. Also, that the same situation existed as to the present proceedings. That there

was identity of nominal parties and "of real parties in interest" in both the first and this removal proceedings. That the first removal proceedings had become final. That "all matters which transpired prior to the trial of the first removal proceeding" were res judicata "with the sole exception that the instant petitioners have a right to urge their claim that the trustee and his counsel testified falsely as to material facts in the first removal proceeding." Concluding that he had no right to retry matters "within the enlarged scope" of the first removal proceeding nor to review previous orders of the court which have become final, the referee limited the hearing to two issues which were:

"1. Whether the Trustee and his attorneys testified falsely as to any material facts in the First Removal Proceeding.

"2. Whether the Trustee and his counsel have been guilty of misconduct since the trial of the First Removal Proceeding."

Such issues were considered separately and each found in favor of respondents. An order was made "in all things" denying the petition for removal.

*Court Order.* On review, the Court determined (after extensive oral arguments and exhaustive briefs) that the findings of fact and order of the referee "be and hereby are in all things adopted and affirmed"; and "in all things" denied the petition for removal. From this order comes this appeal.

## Scope of Issues on Appeal.

In the briefs and oral arguments, there is partial diversity as to what is presented for our decision. Appellants argue four points. Points I and II have to do with the proposition (as stated in I) that "The Trustee and His Attorneys Were Disqualified Because of Their Adverse Interests." Point III is "The Nunc Pro Tunc Appointment and Pursuant Allowance of Fees Were Void." Point IV is that "The Newly Discovered Evidence Calls for a Reexamination of the Qualifications of These Officers of the Court."

Appellees state the issues on this appeal to be "the two contested before the Referee, namely: 1. Whether appellees testified falsely as to any material facts in the First Removal Proceeding; and 2. Whether Appellees were guilty of misconduct after the trial of the First Removal Proceeding." They argue four points which are: I, "Appellants do not argue either issue tried below"; II, "Findings on each issue sustained by the evidence"; III, "Orders of June 4, 1938, and June 20, 1938, not open to attack" (these two orders are the nunc pro tunc order and the pursuant order allowing attorney fees); and IV, "Appellees not disqualified" (a) by representation of general creditors or (b) by previous representation of bankrupt.

The lack of agreement, thus revealed, as to the issues to be here presented compels this Court to determine for itself just what is before us for decision on this record; and, keeping the matters in the briefs in mind, to resolve such.

## Reconsideration of First Removal Proceeding Matters.

One essential difference between these positions of the parties is as to what extent the trial court might decline, in the *present* removal proceeding, to reconsider matters which were or which might have been determined in the *first* removal proceeding.

*First.* As to governing legal principles. Since a bankruptcy proceeding, from the filing of the petition to the final settlement of the estate, is but one continuous suit, and since the bankruptcy court is always open and has no terms, any order of the court may be reexamined and vacated within such pendency unless such vacation would disturb rights which have become vested in reliance upon such order or action. Wayne United Gas Co. v. Owens-Illinois Glass Co., 300 U.S. 131, 136, 137, 57 S.Ct. 382, 81 L.Ed. 557; Sandusky v. First National Bank, 23 Wall. 289, 90 U.S. 289, 292, 293, 23 L.Ed. 155; Wharton v. Farmers & Merchants Bank, May 5, 1941, 119 F.2d 487 this Court; Mulligan v. Federal Land Bank of Omaha, April 9, 1942, 129 F.2d 438 this Court; Wharton v. Farmers & Merchants Bank of Green Ridge, Mo., 119 F.2d 487, 489, this Court; Webster v. Barnes Banking Co., 10 Cir., 113 F.2d 1003, 1005; In re Windsor Square Development Co., 9 Cir., 91 F.2d 493, 496; In re Ives, 6 Cir., 113 F. 911, 913, 914. Whether a prior order should be reexamined or whether, if reexamined, it should be vacated is a matter of sound discretion. Hunter v. Commerce Trust Co., 55 F.2d 1, 4, this Court; McLeod v. Boone, 9 Cir., 91 F.2d 71, 73, and see cases just above cited. What will constitute an abuse of discretion depends upon the particular facts and sit-

uation in each case. 2 Remington on Bankruptcy, 4th Ed., p. 655, § 1111. The exercise of such discretion is reviewable. Woodford v. Cosden & Co., 289 F. 67, 69, this Court, and see cases cited where review was had. Disputed questions of fact are reviewable only to ascertain "whether or not there was any substantial evidence" to sustain the ruling of the trial court. Good v. Kane, 211 F. 956, 958, this Court. Where the bankruptcy court acts in a matter of appointment or removal of trustee, "there must be a clear showing of abuse [of discretion] to warrant the appellate court in interfering". Woodford v. Cosden & Co., 289 F. 67, 68, this Court. Finding of a referee on conflicting evidence adopted by the trial court will not be disturbed "unless manifestly erroneous." Platt v. Schmitt, 87 F.2d 437, 440, this Court, and see Rule 52(a) Rules of Civil Procedure, 28 U.S.C.A. following section 723c. "The court may, in its discretion, withhold all compensation from any * * * trustee, attorney * * * who has been removed from office or dismissed because of the unlawful sharing of fees or for any other cause." Title 11 U.S.C.A. § 76, sub. e.

*Second.* As to the facts. In the order referring the present petition to the referee, it was provided: "The said Referee may in his discretion limit the scope of said hearing to the new matter only, set up by the petitioners, and the issues thereby created, counsel for the petitioners having heretofore advised the court that the essential parts are embodied in paragraphs 33 to 45 and in photostat exhibits 'E' to 'H' of said petition."[6]

In the answer of respondents, one defense was that all of the matters set forth in the present petition were contained in the petition in the first removal proceedings; had been determined therein adversely to these petitioners; and such determination has become final and the matters res judicata, wherefore these peti-

---

[6] Paragraphs 33 to 45 of the petition relate to the pleaded activity, since April 24, 1939, of respondents to defeat the Goldie claims covered by the earlier stipulation of settlement; the concealment of the employment of Deinard's firm by Goldie, in 1928, to deal with this matter (as shown in their service bills being exhibits E, F and G to the petition); suppression of evidence as to this employment in defiance of a subpoena duces tecum served on the members of that firm on June 19, 1939; the concealment and suppression of a stipulation filed in the mechanics' lien foreclosure suit wherein it appeared that Deinard's firm signed as attorneys for certain lien claimants, Brecke for other lien claimants, and both Deinard and Brecke for the bankrupt (this stipulation is dated April 21, 1931, and is exhibit H to the petition); and the false testimony (as shown by this stipulation) of Brecke and of Deinard, at the first removal hearing, that neither of them had ever represented the bankrupt except in a single isolated instance in the spring of 1931 in connection with a motion involving substitution of a trustee under the trust deed securing the bond issue on bankrupt's property.

Exhibit E is a bill for legal services by Deinard's firm to "Mr. Harry Goldie, Leonard Sutterman, and Calhoun Beach Holding Company" for various itemized out of court services, from December 1, 1928 to June 25, 1929, amounting to $450.00. Exhibit F is a bill to "Mr. Harry Goldie (Joint account with Mr. Leonard Sutterman and Mr. J. R. Mendelson and Calhoun Beach Holding Company)" for similar services from June 24, 1929, to August 31, 1929. Exhibit G is a bill to "Mr. Harry Goldie (Joint account with Calhoun Beach Holding Company, and Messrs. Sutterman and Mendelsohn)" for similar services from September 3, 1929 to October 16, 1929.

Exhibit H is a stipulation filed in the consolidated mechanics' lien suit. This stipulation recited that the court had allowed five specified claims for undelivered material in stated amounts and that "a satisfactory arrangement for the delivery of said material has been agreed upon between the parties holding such undelivered material and the defendant" (bankrupt). Then it provided for holding such material by the several claimants until called for by defendant; delivery when called for; and insurance and protection thereof by such claimants until delivery. The stipulation was signed by each of the five claimants (by an officer thereof), by the bankrupt ("by Harry S. Goldie vice-pres.") and by attorneys for the trustees under the bond deed of trust. Thereafter was the statement "The foregoing Stipulation is hereby approved by the Attorneys of record for all parties to said action," which was signed for nineteen parties. Deinard's firm signed as attorneys for two parties (lien claimants), Brecke as attorney for three parties (lien claimants), and both Brecke and Deinard as attorneys for the bankrupt.

·tioners "are thereby barred and estopped from asserting said claims anew."

On the hearing, respondents moved "to limit the scope of the hearing to the new matter set out in the petition and the issues created thereby."[7]

After stating identity of parties in the first and in this removal proceeding, the referee concluded that the decisions of the referee and of the Judge in the first removal proceedings were res judicata of "all matters which transpired prior to the trial of the First Removal Proceeding, with the sole exception that the instant petitioners have a right to urge their claim that the Trustee and his counsel testified falsely as to material facts in the First Removal Proceeding. The undersigned concluded that he has no right to re-try the matters which were within the enlarged scope of the First Removal Proceeding, and which were finally determined in that proceeding, nor to review such decisions or any of the previous orders of this Court which have become final." Therefore, the referee limited the hearing to the two issues of:

"1. Whether the Trustee and his attorneys testified falsely as to any material facts in the First Removal Proceeding.

2. Whether the Trustee and his counsel have been guilty of misconduct since the trial of the First Removal Proceeding."

All of these conclusions are stated in Finding X of the referee.

The hearing consumed four days (July 12–15, 1939). The record before us does not purport to contain all of the testimony and evidence. The testimony and evidence in the transcript of this appeal is made up of (1) pleadings, evidence (or extracts from evidence) and orders of various proceedings all prior to the filing of this petition (including inter alia the first removal proceedings, the application of the trustee's counsel for allowance of fees for general services, hearing as to Goldie's claims and hearing on the trustee's "interim account" or report) ; and (2) testimony and certain exhibits introduced at the hearing on the present petition. This latter consists of a portion of the testimony of A. P. Kimm and various exhibits which are not a part of this testimony by Kimm. In the course of this testimony by Kimm, there is no objection or ruling or

statement concerning the scope of this hearing revealing the attitude of petitioners on the above limitation of issues except one statement by counsel for petitioners (appellants) where, in connection with an objection to a question, he stated:

"I might make the further objection that it is not proper cross-examination and I am also going to say it is res adjudicata because it has been covered before. Perhaps my objection on that line would not be good, though, but, at any rate it seems to me that it is quite foreign to the issue of the trustee's and counsel's guilt in this case which relate fundamentally to three propositions, trickery, fraud and deceit, double crossing so far as the Creditors Committee is concerned, and then false swearing on the part of trustee's counsel."

The petition for review contains a specific reference to Finding X as follows:

"5. Division X, pages 11 and 12, of said decision, should be stricken as manifestly presenting simply views and notions on the part of the Referee, wholly apart from and devoid of any content of fact."

In the short memorandum on the petition to review filed by court, the court stated: "many of the issues presented have already been disposed of by orders of Judge Joyce and former Referee McCune." The findings of fact and order of the referee were "in all things adopted and affirmed."

The Statement of Points by appellants contains no specific attack upon the affirmance "in all things" of all findings of the referee, including of course the finding X, although it attacks other findings specifically. It does contain "point 11" as follows:

"The misconduct of the Trustee and his Counsel, in violating General Orders 42 and 44 in Bankruptcy and in entering into the fee-splitting agreement aforesaid, was contrary to public policy and professional ethics and to the purpose, intent and spirit of the Bankruptcy law and General Orders in Bankruptcy, and constituted subversive misconduct which could not be excused or condoned by any court order, and which requires the removal of the Trustee and his Counsel."

■ *Conclusion.* In the order of reference, there appears the permission to the referee "in his discretion" to "limit the

---

[7] This motion is not in this very fragmentary record. The above quotation is from finding X of the referee.

scope of said hearing to the new matter only, set up by the petitioners, and the issues thereby created." This action of the Court was, at least in part, induced by the attitude of petitioners, the Court stating in the order "counsel for the petitioners having heretofore advised the court that the essential parts are embodied in paragraphs 33 to 45 and in photostat exhibits 'E' to 'H' of said petition." In the very brief oral testimony taken on this hearing and in connection with the introduction at this hearing of various exhibits, there is no statement of objection to the limitation of issues made by the referee except the statement (above quoted) by counsel that the issue as to the trustee and his counsel in this case "relate fundamentally to three propositions, trickery, fraud and deceit, double crossing so far as the Creditors Committee is concerned, and then false swearing on the part of trustee's counsel." In the petition for review, the only attack upon that part of the findings of the referee (Finding X), which stated the limitation of the issues, is that it "should be stricken as manifestly presenting, simply views and notions on the part of the referee, wholly apart from and devoid of any content of fact." In this just stated position of petitioners, up to the order of the court (here appealed), we can find no basis for concluding that this limitation of issues by the referee was so challenged in the court below as to leave that matter open for attack upon this appeal.

However, if it were open here, there is no ground for disturbing it. As shown by the cases cited above, the trial court has a discretion in such matters and such exercised discretion will not be overturned on appeal except upon a showing that such has been abused. It is not an abuse of discretion in a bankruptcy proceeding for the trial court to refuse to retry the same matter upon essentially the same fact situation. Even where the same matter is sought to be tried again upon the basis of additional facts, there is a discretion to try or not which will not be disturbed except for abuse; and whether there is such abuse may be affected by the situation that such additional facts were in existence when the first hearing was had and could, with reasonable diligence, have been then presented.[8]

Here the court, in referring the first removal proceeding, instructed the referee broadly that the reference was "for the purpose of finding out, and making a report to this Court, as to whether or not there is anything unethical, unlawful or improper in the conduct of any of those whose names are mentioned in connection with that petition." In his report, the referee expressly recognized such instructions and stated that he had ruled "that inquiry might be made by the petitioners beyond the allegations of their petition, in order that a complete and final determination might be made of all charges against the trustee and his attorneys." With one possible and one close exception, every matter now urged was included in the evidence at the first hearing.

The possible exception is the charge that Brecke and Deinard each knowingly swore falsely in the hearings on the first removal by stating that their sole employment by the bankrupt was in connection with a motion to substitute a trustee in the deed of trust securing the bonds issued by bankrupt. We say possible exception because of the situation now set forth. This charge of false swearing is founded on a stipulation (Exhibit H to the present petition) between five lien claimants (in the State court lien foreclosure suit) and the bankrupt. This stipulation was signed, for the bankrupt, by Harry S. Goldie. The stipulation was "approved by the attorneys of record for all parties to said action." Under this approval, appears the signatures of "O. A. Brecke and Benedict Deinard Attorneys for Calhoun Beach Club Holding Company." It is upon the last quoted matter that reliance is here placed to show perjury of Brecke and of Deinard in the first removal proceeding. This stipulation was in the judgment roll of the mechanics' lien foreclosure suit in the State court and that judgment roll was introduced in the first removal hearings. Also, Mr. Goldie seems to have referred to this stipulation in his testimony in the first removal proceeding,[9] so he must, in an inci-

---

[8] Compare cases involving res judicata, such as Grubb v. Public Utilities Commission, 281 U.S. 470, 478, 479, 50 S.Ct. 374, 74 L.Ed. 972; Baltimore Steamship Co. v. Phillips, 274 U.S. 316, 319, 320, 321, 47 S.Ct. 600, 71 L.Ed. 1069.

[9] In response to questions as to how long the employment of Brecke by the bankrupt continued, he testified:

"He and Mr. Deinard were acting as attorneys for the corporation right straight through from the end of the lien action, for various matters, until I found that they filed the judgment for liens,

dental way at least, have had its existence in mind at that time although its bearing on the then hearing seems not to have impressed him or anyone else—probably because the misconduct of the trustee and his counsel most relied on in that hearing was in connection with representation of interests other than the bankrupt and with other matters. However, this matter of false swearing in the first removal hearings was the first of the two issues expressly stated and tried by the referee in the present proceedings.

The clear exception is as to misconduct of respondents since the first removal proceedings—this being the second issue stated and heard by the referee in the present proceeding.

Among the matters included in the testimony at the first removal hearings, are exhibits E, F and G to the present petition, being the three itemized bills for services (beginning December 1, 1928, and ending October 16, 1929) rendered by Leonard, Street and Deinard (1) to "Mr. Harry Goldie, Leonard Sutterman, and Calhoun Beach Holding Company" on July 1, 1929, and (2) to "Mr. Harry Goldie (Joint account with Mr. Leonard Sutterman and Mr. J. R. Mendelson and Calhoun Beach Holding Company)" on September 5, 1929, and November 1, 1929. Carbon copies thereof from the office files of Leonard, Street and Deinard were introduced, at the hearing on the first petition for removal, by Deinard who specifically called attention to them[10] and counsel for the then petitioners sought, unsuccessfully, to exclude them.[11]

 From the above recitation of the situation, it is clear that the referee and the court were innocent of any abuse of discretion in eliminating from consideration, on this present petition, all matters occurring prior to the hearings on the first removal petition with the exception of the charges of false swearing by Brecke and by Deinard in those hearings.

## II. The Nunc Pro Tunc Order.

Point III of appellants' brief is "The Nunc Pro Tunc Appointment and Pursuant Allowance of Fees Were Void." This is presented under the sub-headings: "A. The Court Had No Power to Make the Nunc Pro Tunc Order of June 4, 1938"; "B. The Nunc Pro Tunc Order of June 4, 1938, Was Contrary to Public Policy and Therefore Void"; "C. The Order of June 20, 1938, Allowing Brecke and Deinard Attorneys' Fees Was Void." In their brief, appellees counter the above under an argument headed "Orders of June 4, 1938, and June 20, 1938, Not Open to Attack", whereunder they argue (1) that appellants' attack upon the orders is collateral and the orders are not open to such attack because they were appealable, were appealed from, and the appeal voluntarily dismissed, whereupon they became final; (2) that appellants conceded, before the referee, that they could not collaterally attack such orders, took no exception to the referee's ruling on the point, and cannot here reverse the position they took in the trial court; (3) even if the order of June 4, 1938, were void (as contended) yet the court determined it had jurisdiction when it made them, the determination was appealable and became res judicata against collateral attack; (4) that not only was such order not void, it was not erroneous because a proper exercise of the bankruptcy court's discretionary power.

 It is clear that this attack upon the orders is collateral and such seems conceded by appellants in their brief (last paragraph p. 32). Against collateral attack, these orders are protected by the rule of res judicata. Chicot County Drainage

---

which was contrary to the Order of the Court, and he had me sign a stipulation which tricked us into letting them hold the material, but did not provide he could file the judgment for the liens."

[10] These invoices were part of Exhibit M which was identified by Deinard as follows:

"Exhibit 'M' is the original entry in our partnership records of all services performed for Mr. Goldie, Mr. Sutterman, Mr. Mendelsohn, and the Calhoun Beach Holding Company from December 1st, 1928, to October 16th, 1929; which contains the original entry of all time spent, and the original carbon duplicate of the invoices sent to those men respectively, on July 1st, 1929. September 5th, 1929, and November 1st, 1929. They were made under our joint supervision and made in the usual course of business, are our original record and part of our permanent bookkeeping record; and I know of my own knowledge that they are true and correct."

[11] The objection to these invoices, that they were secondary evidence, was strongly urged by counsel for the petitioners (printed record pp. 177–179).

District v. Baxter State Bank, 308 U.S. 371, 376, 377, 60 S.Ct. 317, 84 L.Ed. 329; Stoll v. Gottlieb, 305 U.S. 165, 172, 59 S.Ct. 134, 83 L.Ed. 104; Oriel v. Russell, 278 U.S. 358, 363, 49 S.Ct. 173, 73 L.Ed. 419; Levy v. Charlesworth, 74 F.2d 495, 496, this Court; In re Schulte-United, 59 F.2d 553, 559, this Court. This does not mean that any order made in the course of administration of a bankrupt estate is not open to challenge therein, so long as vested rights founded thereon have not intervened; but the only permissible method of so doing is by direct challenge (such as motion to vacate) where the bankruptcy court may exercise its reasonable discretion and such is reviewable (see cases cited under I of this opinion and Stoll v. Gottlieb, 305 U.S. 165, 176, 59 S.Ct. 134, 83 L.Ed. 104; Vallely v. Northern Fire & Marine Ins. Co., 254 U.S. 348, 41 S.Ct. 116, 65 L.Ed. 297; In re Schulte-United, 59 F.2d 553, 560, this Court.

Another reason why this point is not open for examination on this appeal is that, as presented here, it was not an issue before the referee. This Court is not a court in bankruptcy but acts purely as an appellate court and will not consider questions not presented below. Amick v. Columbia Casualty Co., 101 F.2d 984, 986, this Court; Cowherd v. Phoenix Joint Stock Land Bank of Kansas City, 94 F.2d 329, 331, this Court; Levy v. Charlesworth, 74 F.2d 495, 496, this Court; In re Schulte-United, 59 F.2d 553, 559, this Court.

The matter is presented here as though the validity of these orders had been challenged and determined below. That was not the case. The petition presents no such issue. No such issue was presented to or passed on by the referee. At the hearing before the referee, counsel for petitioners correctly stated the general scope of the issues to be "three propositions, trickery, fraud and deceit, double crossing so far as the creditors committee is concerned, and then false swearing on the part of trustee's counsel."

### III. Fact Issues as to Misconduct.

The fact issues considered and determined by the referee and affirmed by the court are two: (a) "Whether the trustee and his attorneys [knowingly] testified falsely as to any material facts in the First Removal Proceeding"; and (b) "whether the trustee and his counsel have been guilty of misconduct since the trial of the First Removal Proceeding."

(a) *False swearing issue.* This issue has to do with a statement in the testimony of Deinard and of Brecke at the hearing of the first removal proceeding. Each of these witnesses testified that the only legal services by him to the bankrupt was in connection with opposition to a motion to substitute a trustee under the deed of trust securing bonds issued by the bankrupt, about April 24 and 25, 1931. In the answer of respondents to the present petition, they admit this statement was not true. The issue here of misconduct is not that the statement was untrue but that it was deliberately made with knowledge of its falsity.

The referee found that, in addition to the services in connection with the above substitution of trustee, the two attorneys represented the bankrupt in three other instances in the lien foreclosure suit. As stated by the referee, those three were as set forth in the footnote.[12] In their brief

---

[12] "(a) In March, 1931, Brecke and Deinard as attorneys for the bankrupt, signed a Notice of Motion filed March 25, 1931, asking for the amendment of Paragraph VI of the findings in one particular,—by adding to the statement that the Court made no finding as to the amount of outstanding bonds, the following phrase, 'or the amount of the mortgage lien of the said Trust Deed.' Actual signature of the motion was by Brecke's secretary.

"(b) On or about April 21, 1931, Brecke and Deinard, as attorneys for the bankrupt, signed an approval to a stipulation which was entered into between five lien claimants who held undelivered specially fabricated material, and the bankrupt, and the defendant trustees,

providing for the conserving of the undelivered material. By the stipulation, the lien claimants were relieved from the obligation to make delivery of the material until such time as delivery was called for by the bankrupt or the trustees, or the further order of the Court. The stipulation was signed for the bankrupt by Goldie as vice-president, and for the trustees by their counsel; and the approval was signed by counsel of record for all parties to the action. actual signature of the approval for the bankrupt was by Deinard. A photostat copy of the stipulation, including the approval, is attached to the instant petition as Exhibit 'H'.

"(c) On August 12, 1931, Brecke and Deinard admitted service for the bank-

(pp. 8–9), appellants list ten instances, of which three (numbered 2, 3 and 6) are those stated by the referee, and two (numbered 4 and 5) related to the substitution of trustee matter (the matter testified to by Deinard and Brecke at the first removal hearing). The other five are set forth in the footnote.[13] In appellants' petition to review, there was no exception to or mention of the action of the referee in confining the instances of service to the above three. In no way, appearing in this record, was this drawn to the attention of the court below in connection with such review. The first appearance in this record is in point "6" of the "Statement of Points" on this appeal. Since this matter of error, if it be such, is raised for the first time on appeal and not presented for action to the trial court, it is not open here. Amick v. Columbia Casualty Co., 101 F.2d 984, 986, this Court, and cases there cited. We are confined to the three instances discussed by the referee.

The detailed discussion of the evidence bearing on the question as to whether Brecke or Deinard consciously swore falsely as to this matter on the first removal proceedings is analyzed in detail by the referee in his findings and his conclusions. These are set forth in the footnote.[14] On review, the Court entered an order affirm-

---

rupt on a Notice of Motion to Confirm Sheriff's Sale. Actual signature of the admission of service was by Brecke's secretary."

[13] "(1) Brecke & Deinard formally substituted March 6–10, 1931, in place of Brill & Maslon, as attorneys for the present bankrupt. The instrument evidencing this fact was not in the judgment roll (made up May 27, 1931) because not filed until November 30 following. (Photostat herein.)

\* \* \* \* \* \*

"(7) Admission, November 25, 1931, by O. A. Brecke, per Benedict Deinard (in Deinard's hand), as attorney for Minneapolis Builders Supply Co., Stewart G. Collins, Magney & Tusler, Inc., and the bankrupt, of service of Conners' notice of appeal. (Filed November 27.)

"(8) Like admission, same date and filing, on Nicol's notice of appeal.

"(9) Stipulation (undated, filed November 25, 1931) between counsel for the various lienors, signed by O. A. Brecke and Benedict Deinard (in the hand of Brecke's secretary), as attorneys for the bankrupt, appointing Brecke to accept service of proposed settled case in the appeals of Conners and Nicol and to attend on behalf of all other lienors to the allowance of settled case, etc.

"(10) Stipulations (dated November 20, 1931, and filed February 3, 1932) between various counsel, signed by Oscar A. Brecke (in hand of his secretary), as attorney for bankrupt and some 19 lienors and judgment creditors, providing for printing of certain parts of the record in the appeals of Conners and Nicol."

[14] "At the hearing of the First Removal Proceeding, Deinard testified with his diaries for the years 1929 to 1935 inclusive, before him, referring to the diaries. (tr. p. 212). The only entries contained in his diaries of any work performed by him for the bankrupt are the following items:

"April 24, 1931 'Calhoun Beach—with Brecke—response to motion to substitute successor-trustee'

"April 25, 1931 'Calhoun Beach, motion to substitute successor-trustee, Judge Baldwin.'

"During the entire spring of 1931, Deinard was daily engaged in the trial of a consolidated lien foreclosure on the Foshay Tower. No entry whatever appears upon his diary as to items (a), (b), and (c), above mentioned.

"At the time they testified in the First Removal Proceeding, Deinard and Brecke did not have in mind or remember, and have not now any actual recollection of their representation of the bankrupt with respect to any of said three items.

"As to item (a): Deinard did not remember in 1935 and has not now any recollection either of the preparation or signature of the motion, and has no recollection that the motion was ever presented or argued either by himself or Brecke. He was under the impression that Mr. John Goldie, who did represent the bankrupt in the action after the trial for some period, had made a motion for a new trial on behalf of the bankrupt, and so testified (Tr. p. 252); in fact, the motion made by Mr. Goldie was on behalf of the Calhoun Beach Holding Company.

"As to item (b): he has always known of the existence of the stipulation and its purport, but in 1935, he had completely forgotten that he signed the approval in the name of Brecke and himself as attorneys for the bankrupt, and was not conscious of that fact until it was mentioned by Mr. Lundquist shortly before the hearing of the instant petition.

As to item (c), the situation is as follows: Deinard left Minneapolis on June 27, 1931, for a trip abroad and did not return until September 11, 1931. The sale and motion to confirm occurred during his absence; he therefore had no con-

ing and adopting the findings of the referee "in all things"; and filed a brief memorandum wherein he stated:

"Counsel have made extensive oral arguments to the Court and have filed exhaustive briefs which have been carefully considered. I have examined all of the files and records and have fully familiarized myself with the various contentions of the parties. I might spend weeks in pre-

temporaneous knowledge of the subscription of his name to the admission of service, and did not know of it in 1935, and has no present recollection of ever learning of it, although he does not deny the authority of Brecke to use his name.

"Deinard did not have in his file in 1935 and does not have now any copies of the documents involved in the three items.

"As to item (a): Brecke must have prepared it, but in 1935 he had forgotten it, and has no present recollection concerning the preparation or argument of this motion. He is of the opinion that Goldie requested him to prepare the motion, because otherwise he would not have done so.

"As to item (b): Brecke at all times knew of the stipulation and believes that it was prepared in his office. In 1931 he undoubtedly knew of the signature of the approval by Deinard in their names on behalf of the bankrupt, but in 1935 he had forgotten it, and now has no actual recollection of the signature.

"As to item (c): Brecke knew that he prepared the Notice of Motion to confirm the Sheriff's sale, but he did not remember in 1935 and at present has no actual recollection of authorizing the signing of the admission of service. He knows that the notice of sale was served by the Sheriff on Goldie and that Goldie was present at the sale in the Sheriff's Office, but he has forgotten the circumstances surrounding the admission of service: but is of the opinion that Goldie requested him to sign, because otherwise he would not have done so.

"At the First Removal Proceeding, neither Deinard nor Brecke were questioned about any of the foregoing items, and gave no testimony with respect to them, except in so far as they offered in evidence the entire Lien Foreclosure file, which will be hereafter referred to.

"Neither Brecke nor Deinard made any charge to the bankrupt for their representation of the bankrupt in these three items and received no compensation therefor. In that respect, these items differed from the item of services about which they testified, for which they made a specific charge and were paid. (Tr. p. 275, 288, 301). They were never under a general retainer from the bankrupt or from Goldie.

"After the conclusion of Cause No. 298881, the file therein was offered and received in evidence in an action brought in August, 1932, to set aside the lien judgment and sale, file No. 331760, in the District Court of Hennepin County, and was certified to the Supreme Court of the State of Minnesota in connection with the appeal of the plaintiffs in that suit, reported in Calhoun Beach Holding Co. v. Minneapolis Builders' Supply Co., 190 Minn. 576, 252 N.W. 442. After the conclusion of that case, the file was produced and portions of it offered in evidence in the bond suit, file No. 3181 in this Court, entitled: 'Harold W. Cox, as Trustee, etc., plaintiff, v. Fidelity & Casualty Company of New York, defendant', which was tried in the spring of 1934. Thereafter the file remained in the office of the Clerk of this Court until the opening of the hearing of the First Removal Proceeding on December 23, 1935, when the Trustee procured the entire file from the Clerk (Tr. First Removal Proceeding, p. 6) and it was delivered to Mr. Elliott, attorney for the petitioners (T. p. 3–4). Upon said hearing, Mr. Elliott offered in evidence certain documents out of the judgment roll (Tr. p. 4 et seq), against the objection of counsel for the trustees, who repeatedly insisted that the whole judgment roll be offered in evidence. (Tr. p. 4–5, 13–14). Mr. Elliott declined to offer the entire judgment roll, but offered the complaint, findings of fact, and judgment and decree, stating to Mr. McCune that he was not concerned with the rest of the judgment roll. (Tr. p. 6, 14). Mr. McCune overruled the objection of counsel for the Trustee but stated that the judgment roll would be a part of his Report in so far as anything in it was deemed by him material, and that he would either admit it himself [of] secure its admission through some motion before the case was completed. (Tr. p. 7, 14). Later Deinard offered the entire judgment roll in evidence, and Mr. Elliott objected to it. (Tr. p. 65, et seq). Later in the trial the entire judgment roll and the balance of the file, comprising the proceedings subsequent to judgment, including specifically the motion to confirm the sale, were offered by Deinard and received in evidence. (Tr. p. 93, 239, Report of March 20, 1936, p. 6).

"In view of their insistence at the First Removal Proceeding that the entire file be received in evidence, it is unreasonable to suppose that counsel for the

paring an extensive memorandum setting forth my views in great detail, but no particular good would be accomplished. I cannot hope to convince the aggrieved par-

Trustee entertained any intention of withholding or concealing either from counsel for the petitioners or the Court their representation of the bankrupt in 1931, or any facts appearing on the face of the documents in the file. In addition, Deinard then produced all his files with reference to all the litigation relating to the Calhoun Beach Club enterprise and invited petitioner's counsel to examine it as well as his diaries and correspondence. (Tr. p. 253).

"Counsel for the instant petitioners claim that they did not learn of the foregoing items until a short time before the presentation of the instant petition, because of the size and complexity of the judgment roll. The undersigned is satisfied that at the trial of the First Removal Proceeding the petitioners therein and their counsel had not carefully examined the judgment roll and had no knowledge of the foregoing documents. Their theory then was that the Trustee's counsel were adversely interested because they had represented lien claimants, not because they had at one time represented the bankrupt, and their interest in the lien foreclosure record was limited to proving a few simple facts. (Tr. p. 4, 6, 7, 9). In contrast, when counsel for the Trustee similarly objected to the introduction of portions of the judgment roll piece-meal of the action to set aside the lien judgment, the petitioners offered the entire judgment roll (Tr. p. 28). Of course, petitioners' counsel knew that the record if searched would disclose every appearance at every stage of the case. (Tr. p. 277). Apparently Goldie had forgotten about the items of representation by Brecke and Deinard although he knew of and testified as to the stipulation with reference to the undelivered material (Tr. p. 81), and testified to other alleged employment of Deinard and Brecke with reference to the lien action, which Mr. McCune found untrue, and the fact that judgment had been entered without the delivery of the fabricated materials had been one of the grounds of the action commenced by Goldie to set aside the lien judgment. (Report of March 20, 1936, p. 6).

"It is easy to understand how Brecke and Deinard likewise failed to recall these items, which are all trivial and incidental in character, especially in view of the fact that they had been engaged in other extensive litigation directly or incidentally affecting the bankrupt's property, which occupied the entire period after the fall of 1929, and had not examined the judgment roll for several years at least.

"The undersigned is satisfied that the testimony of Brecke and Deinard at the First Removal Proceeding was given honestly and in good faith, and that their failure then to charge their memories with the foregoing items of representation in 1931 was purely inadvertent and an innocent oversight on their part. There was no conceivable motive for suppressing these items while voluntarily testifying to the work for which they were paid, and the undersigned is satisfied that they wanted to present all the facts to the Court, and if they had remembered these items, would have called them to the Court's attention.

"In connection with item (a), (motion to amend the findings), it appears that the interests of the lien claimants represented by these lawyers and of the bankrupt were identical, and there was no conceivable impropriety in these attorneys appearing on that particular occasion for the bankrupt.

"The same situation is true with respect to item (b), the signing of the approval to the stipulation with respect to the undelivered fabricated material. A common problem faced all parties interested in the litigation; none of them wanted the material delivered then, and the stipulation was developed in general conferences and pursuant to a general understanding. Item (c) was a purely routine matter; Goldie was present at the sale and was fully advised as to such proceedings, and no prejudice could have occurred to the bankrupt.

"Until the spring of 1931, Mr. Brill represented the bankrupt as well as certain lien claimants in the foreclosure. In the spring of 1931, Goldie had a disagreement with Mr. Brill. Deinard testified to those circumstances in the First Removal Proceeding, (Tr. p. 219–220), as did Brecke (Tr. p. 274). It also appears from the judgment roll that after February 1931, Mr. Brill had declined to admit service or appear for the bankrupt, and that thereafter the bankrupt had no regular counsel in the Lien Foreclosure Proceeding, Mr. John Goldie admitting service for the bankrupt before Brecke and Deinard appeared.

"Said items of representation in the spring of 1931 were and are wholly immaterial to any issues in this Bankruptcy proceeding. Deinard and Brecke's connection with the bankrupt had terminated long before the involuntary petition was filed; it did not create any adverse interest in counsel for the Trustee."

ties that they are in error, in light of the extreme bitterness which prevails and the deep-seated conviction everyone seems to entertain as to the correctness of his position. In justice to the Trustee and his counsel, however, against whom acrimonious and scurrilous charges have been leveled herein, I should state that I find nothing to support these charges and find that they are wholly and completely unfounded and baseless."

■■■ Thus we have the situation of findings by a referee adopted by the reviewing trial court. Even where findings are made originally by a trial court, it is the law that they "shall not be set aside unless clearly erroneous." Rules of Civil Procedure, Rule 52(a); Fidelity & Deposit Co. of Maryland v. Aberdeen Nat. B. & T. Co., 8 Cir., 124 F.2d 973, 979; Sonken-Galamba Corporation v. Atchison, T. & S. F. Ry. Co., 8 Cir., 124 F.2d 952, 956. If possible, the situation as to findings is even more fixed where a referee, who (as here) sitting as a court (In re Mifflin Chemical Corporation, 3 Cir., 123 F.2d 311, 313), makes findings which are concurred in by a reviewing trial court (see Platt v. Schmitt, 8 Cir., 87 F.2d 437, 440; Ricketts v. Waller, 8 Cir., 81 F.2d 977, 979. The question before us is, therefore, whether the findings of the referee that neither Brecke nor Deinard remembered, at the time they testified in the first removal proceedings, that either of them had given the above services to the bankrupt. If either so remembered, his testimony was knowingly false and constituted grave misconduct. If not, there was no such misconduct. The test is whether there is substantial evidence to sustain the findings that they did not so remember. Every word of testimony in this record has been read and carefully considered with this test in mind and we have no doubt that such substantial evidence is here. It serves no useful purpose to detail the entire evidence. It is sufficient to set forth certain features of the evidence. Each of these witnesses stated in much detail every service he had rendered the bankrupt. Each was familiar with the services rendered by the other, with slight exceptions. The only such service for which they received any fee was in connection with the substitution of trustee—fifty dollars each. Deinard kept an office diary from which he testified. Therein appeared no entry as to any other service. He had, at the hearing on the first removal, these diaries from 1929–1935 (time of the hearing) and also his office files, checks and correspondence—all of which were voluntarily produced and tendered opposing counsel for examination.

These three items were in the judgment roll and papers of the lien foreclosure suit. When petitioners sought to introduce only limited matters from this roll, respondents insisted that the entire roll and papers go in, offered them and they were received without objection. Goldie, who was as familiar as were they with all of these services, had evidently forgotten them. None of such services nor all of them, was such as required much effort, so that they would naturally have been fixed in mind. They were rather formal matters—the motion to amend the findings was by an additional statement which would follow almost as a detail to the finding sought to be amended; Deinard signed their names to the approval of the stipulation concerning the undelivered material which had been already executed by Goldie for the bankrupt; admission of service of a notice to confirm the foreclosure sale was entirely formal as there was no contest of such confirmation.

The above outlined evidence (and other matters referred to in the finding) reveals a situation where it was not unnatural to forget these services and where respondents evinced every willingness to furnish all data in their possession and to place in the evidence all matter (including these very things) bearing on their services to the bankrupt. Such a situation argues an honest attempt to place the entire facts before the referee and court rather than a conscious effort to deceive through perjury. Certainly, they constitute substantial evidence to support these findings of the referee and adoption of such by the trial court. This issue must be resolved against appellants.

■■■ (b) *Misconduct issue.* This issue has to do with the contention of petitioners that Brecke and Deinard (for themselves and the trustee) had an agreement or understanding with petitioners that, if petitioners would dismiss their appeal, the estate would be speedily wound up, the prior allowance of Goldie's claims left undisturbed; they would not oppose the fee claim for counsel of petitioners, would make concessions as to fees for counsel of the trustee, and would ask only nominal counsel fees for closing the estate; and that respondents had, after dismissal of the

appeal, violated all of the conditions of the understanding. Since the evidence is undisputed that, after dismissal of the appeal, respondents continued to oppose Goldie's claims, opposed allowance of fees to counsel for petitioner, and made no abatement or change in claims for fees for counsel of the trustee, it is clear that, if such understanding existed, there was a deliberate violation thereof. Therefore, the issue got down to whether there was such an understanding.

The evidence as to any understanding is in sharp and direct conflict. The referee found as follows:

"In the conferences which were held in Judge Joyce's Chambers on December 22, 1938, and on February 14, 1939, Brecke and Deinard made it clear that they could not consider any proposed compromise or make any commitment while the appeal was pending, and that if the appeal were dismissed, they would reserve absolute freedom of action for the best interests of the estate, subject to the Court's direction; and that in any event, they would deal with the claims of Goldie on the merits, as they would with any other litigant and without letting any bias or personal feeling enter into their judgment.

"The only understanding that was arrived at was that Brecke and Deinard would close the estate as promptly and as economically as possible, and that they would be satisfied with such reasonable allowance for their services in closing the estate as the Court might fix, having in view all the circumstances, including the prior allowance of their fees."

This finding was adopted by the trial court. It is supported by direct and substantial evidence. Being thus supported, we should not overturn it. No violation of the understanding so found is shown in the evidence.

Another matter considered by the referee was a contention that counsel for the trustee had secreted or suppressed certain evidence in connection with the Goldie claims. The referee found this contention "baseless, and that Goldie had possession and knowledge of the very documents at the time he was charging that the Trustee's counsel were concealing the same." This finding is supported by substantial evidence.

The order from which this appeal is taken must be and is affirmed.